**TCHACOSH COMPANY, LIMITED,**
Plaintiff-Appellant,

v.

**ROCKWELL INTERNATIONAL CORPO-RATION, and Rockwell International Systems, Inc., Defendants-Appellees.**

No. 84–5628.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1984.

Decided July 23, 1985.

Stephen D. Miller, Thomas J. Nolan, George W. Buehler, Miller & Nolan, Inc., Beverly Hills, Cal., for plaintiff-appellant.

Munger, Tolles & Rickershauser, Jeffrey I. Weinberger, Ralph F. Hirschmann, Los Angeles, Cal., for defendants-appellees.

Before TANG, SCHROEDER and BEEZER, Circuit Judges.

TANG, Circuit Judge:

Tchacosh Company, Ltd. (Tchacosh) appeals the district court's judgment in favor of defendants-appellees Rockwell International Corporation and Rockwell International Systems, Inc. (Rockwell). It found that Tchacosh lacked capacity to sue, and granted summary judgment for Rockwell. We affirm.

## FACTS

In November, 1978, Tchacosh entered into a subcontract with Rockwell for the construction of certain defense facilities at the Mehrabab Airport in Teheran, Iran. This subcontract was part of a prime contract Rockwell had entered into with the Government of Iran. Tchacosh's action arises from its subcontract with Rockwell.

Throughout all relevant time periods Tchacosh has been a corporation organized and operating under the laws of Iran. When Rockwell subcontracted with Tchacosh only three authorities were authorized under Iranian law to manage a company such as Tchacosh: the general meetings of shareholders, the board of directors and the managing director. Prior to mid-1979, Hassan M. Hashemi was the managing director and chairman of the board of Tchacosh.

On June 14, 1979, the Government of Iran enacted the Temporary Director Act.[1] This Act provides that the former directors of a company cease to have power to manage the company upon appointment of a temporary director.[2] A subsequent amendment vests the temporary director with all the functions of the director, managing director and general meetings of the shareholders. Pursuant to this Act, the Government of Iran appointed Ali Mahmoudi as temporary director of Tchacosh on August 18, 1979.

Article 212 of the Companies Law of Iran provides that upon appointment of a liquidator and upon institution of liquidation proceedings, the powers of the director of the company involved are "extinguished." The liquidators are considered to be representatives of the company and they "possess all necessary powers to facilitate the liquidation of the company, including instituting lawsuits and referring claims for arbitration." In 1981, the Government of Iran dissolved Tchacosh under the authority of the Management and Acquisition Act: it appointed Mohammad Ali Shabestari as liquidator for Tchacosh and instituted liquidation proceedings.

Hashemi departed Iran in June, 1979, before the appointment either of a temporary director or liquidator to Tchacosh.

In December, 1979, Hashemi filed this suit on behalf of Tchacosh against Rockwell, claiming that Tchacosh had substantially performed on its subcontract with Rockwell and is therefore entitled to some form of recovery. In its third amended complaint, Tchacosh alleged causes of action for breach of contract, money had and received, *quantum meruit,* and unjust enrichment against Rockwell.

Rockwell moved for and the district court granted summary judgment, finding that Tchacosh had not been properly authorized to bring suit. *See* Fed.R.Civ.P. 17(b). The court found that Hashemi had directed the action against Rockwell and ruled that Hashemi was not qualified to maintain an action on behalf of Tchacosh under Iranian law as of August 19, 1979. The court found that the actions of the Government of Iran divesting Hashemi of his authority were executed within Iranian territory; and that the act of state doctrine barred judicial examination of acts committed by a government within its own territory.[3]

---

1. Officially termed the "Act Concerning the Appointment of a Temporary Director or Directors for the Supervision of Production, Industrial, Commercial, Agricultural and Service Units Whether in the Public or Private Sectors."

2. The translations of Iranian law that we rely upon are based upon an undisputed affidavit from Rockwell's expert.

3. The district court also held that Tchacosh was collaterally estopped from contending that the Government of Iran's appointees do not constitute the appropriate authorities to manage that

## DISCUSSION

Upon review of summary judgment, this court views the evidence in the light most favorable to the nonmoving party, and determines whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to a judgment as a matter of law. *Veit v. Heckler,* 746 F.2d 508, 510 (9th Cir.1984).

Appellant Tchacosh raises two legal issues on appeal. First, appellant contends that the district court incorrectly interpreted Iranian law, arguing that the Iranian government did not intend for the decrees divesting Hashemi of control to apply to his authority to maintain suit on behalf of Tchacosh for work performed while he still managed the affairs of the company.

■ Upon review, the district court's determination of foreign law is treated as a question of law. Fed.R.Civ.Proc. 44.1; *Matter of McLinn,* 739 F.2d 1395, 1398 (9th Cir.1984) (en banc). Rockwell's expert on Iranian law established that the decrees, by their own terms, divested Hashemi of all control over the on-going affairs of Tchacosh. The Temporary Director Act disqualifies former directors from managing the company's affairs and vests all authority and responsibilities of the director, managing director and general meetings of shareholders in the temporary director. Article 212 of the Companies Law of Iran provides further that upon appointment of a liquidator to a company the powers of the directors, including temporary directors, are extinguished and the liquidator possesses "all necessary powers to facilitate the referring claims for arbitration or compromise." Tchacosh does not dispute that on August 18, 1979, the Government of Iran appointed a temporary director to Tchacosh, or that in 1981, a liquidator was appointed. Appellant has presented no evidence which indicates that the Iranian government intended under the decrees to salvage any portion of his power over the affairs of Tchacosh.[4] The district court's determination that Iranian law divested Hashemi, as of August 19, 1979, of his authority to bring suit is therefore affirmed.

■ Second, Tchacosh contends that even if Iranian law deprives Hashemi of authority to maintain the present action on its behalf the law should not be given effect by United States courts because it conflicts with our stated public policy against confiscations without compensation. Appellant recognizes that under the act of state doctrine, courts will not examine the validity of acts of foreign states—even if in conflict with our notions of justice—if those acts are executed within the

company. The court cited *Rexnord, Inc., Claimant and the Islamic Republic of Iran, Tchacosh Co. and Iran Siporex Industrial and Manufacturing Works, Ltd., Respondents,* Case No. 132, Award No. 21–132–3, reprinted in Iranian Assets Litigation Reporter, pp. 5959–67 (January 21, 1983), in which the Iran-United States Claims Tribunal, found that since the latter half of 1979, the Iranian government had the power to appoint directors to Tchacosh, and that the company was an entity controlled by Iran. *Id.* at 5963. Whether application of collateral estoppel is appropriate against Tchacosh in litigation directed by Hashemi, a non-party to *Rexnord,* is not discussed. The resolution of that issue is not necessary to the disposition of this case; nor was the issue raised by Tchacosh.

4. Appellant argues that the decrees do not specifically address the authority of a former director to collect an outstanding debt. Appellant relies on *Tabacalera Severiano Jorge, S.A. v.*

*Standard Cigar Co.,* 392 F.2d 706 (5th Cir.), *cert. denied,* 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968), in which a former owner of a tobacco company was suing on a debt owed before "intervention" by the Cuban government. In an alternative holding, the court decided that, in the absence of express action by the Cuban government to revoke an unconditional power of attorney of the original owner in order to authorize the new "interventor" to sue, the original owner could collect a pre-intervention debt based on his power of attorney. *Id.* at 714, *questioned in Bandes v. Harlow & Jones, Inc.,* 570 F.Supp. 955, 962 (S.D.N.Y.1983). Appellant's reliance on this case is misplaced. In the instant case, under both the Temporary Director Act and the Companies Law, all powers of former directors and persons in charge are expressly terminated and vested in persons appointed by the Government of Iran. A liquidator has express powers to institute lawsuits in order to facilitate liquidation.

foreign state's territory, *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428, 84 S.Ct. 923, 940, 11 L.Ed.2d 804 (1964) (hereinafter *Sabbatino*); *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). Appellant relies, however, upon a well-established corrollary to the act of state doctrine, the so-called "extraterritorial exception," which holds that, when inconsistent with the policy and law of the United States, "our courts will not give 'extraterritorial effect' to a confiscatory decree of a foreign state, even where directed against its own nationals." *Maltina Corp. v. Cawy Bottling Co.*, 462 F.2d 1021, 1025 (5th Cir.), *cert. denied*, 409 U.S. 1060, 93 S.Ct. 555, 34 L.Ed.2d 512 (1972), *quoting F. Palicio y Compania, S.A. v. Brush*, 256 F.Supp. 481, 488 (S.D.N.Y.1966), *aff'd mem.* 375 F.2d 1011 (2d Cir.), *cert. denied*, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967); *Tran Oui Than v. Blumenthal*, 469 F.Supp. 1202, 1209–10 (N.D. Cal.1979), *aff'd in part and remanded sub. nom., Tran Oui Than v. Regan*, 658 F.2d 1296, 1303–04 (9th Cir.1981), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 487, 74 L.Ed.2d 630 (1982). Appellant argues that (1) although the Iranian decrees purport only to divest Hashemi of legal control over Tchacosh, the decrees have effectively deprived him of his ownership of Tchacosh as well, (2) Tchacosh's contract claims constitute debt, a form of property, albeit intangible, (3) that debt has its situs with the debtor, Rockwell, in the United States. Relying on cases which have found that, for purposes of the act of state doctrine, the location of a "debt" is with the debtor, *e.g., Menendez v. Saks and Co.*, 485 F.2d 1355, 1364–65 (2d Cir.1973), *reversed on other grounds, sub. nom. Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976); *Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.*, 392 F.2d 706, 716 (5th Cir.), *cert. denied*, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968), appellant contends that this case demands application of the extraterritorial exception. He urges that this court not give effect to the Iranian decrees, at least as they purport to

affect the debt which accrued before divestment of Hashemi's authority.

The classic statement of the act of state doctrine derives from *Underhill v. Hernandez, supra:*

> Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment of the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

*Underhill*, 168 U.S. at 252, 18 S.Ct. at 84. The doctrine "arises out of the basic relationships between branches of government in a system of separation of powers," *Sabbatino*, 376 U.S. at 423, 84 S.Ct. at 938, and recognizes the primacy of the executive in the area of foreign affairs. In *Banco Nacional de Cuba v. Sabbatino*, the Supreme Court reaffirmed the doctrine's application to foreign confiscations:

> [T]he Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit....

376 U.S. at 428, 84 S.Ct. at 940.

■ Notions of territoriality run deep through the doctrine. *See id.* at 432, 84 S.Ct. at 942. However, when property is located within United States territory at the time of confiscation, "the policies mandating a hands-off attitude no longer apply with the same force." *Bandes v. Harlow & Jones, Inc.*, 570 F.Supp. 955, 960 (S.D.N.Y.1983). A corollary to the act of state doctrine has thus been fashioned:

> [W]hen property confiscated [by a foreign sovereign] is within the United States at the time of the attempted confiscation, our courts will give effect to acts of state "only if they are consistent with the policy and law of the United States."

*Republic of Iraq v. First National City Bank*, 353 F.2d 47, 51 (2d 1965), *cert. de-*

*nied,* 382 U.S. 1027, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966) (citation omitted).

The rationale underlying the extraterritorial exception follows from the considerations which support the act of state doctrine. "The obvious inability of a foreign state to complete an expropriation of property beyond its borders reduces the foreign state's expectations of dominion over that property...." *Maltina Corp.,* 462 F.2d at 1028. Consequently, the potential for offense to a foreign state is reduced, as well as the need for judicial deference to the other branches of government. *Id.* at 1028–29.[5] Also, judicial enforcement of judgments becomes possible when property is located within United States territory. *United Bank Ltd. v. Cosmic Int'l, Inc.,* 542 F.2d 868, 873–74 (2d Cir.1976); *Menendez,* 485 F.2d at 1364–65; *Tabacalera Severiano Jorge, S.A.,* 392 F.2d at 714–16.

Appellant claims the Government of Iran has effected an extraterritorial seizure of property. Rockwell argues that the extraterritorial exception does not apply since the Iranian decrees did not confiscate Hashemi's property, but only divested him of management authority, an act perfected within Iranian borders.

We agree with Rockwell that the confiscation of Hashemi's management authority would not fall within the extraterritorial exception. Nevertheless, Hashemi has asserted that the Government of Iran confiscated more than just his management authority. Specifically, Hashemi claims that he is the owner of Tchacosh. As an owner, Hashemi has standing to challenge the alleged confiscation of Tchacosh. *See Maltina Corp.,* 462 F.2d at 1026–28; *Tabacalera Severiano Jorge, S.A.,* 392 F.2d at 714–16; *Zwack v. Kraus Bros. & Co.,* 237 F.2d 259 (2d Cir.1956). It is not necessary for us to decide whether Tchacosh has, in fact, been confiscated. Instead, we focus on the narrow issue of whether the assets of Tchacosh that are involved in this case are subject to the extraterritorial exception.

The issue before this court, then, in determining the application of the extraterritorial exception, is whether at the time of divestment, Rockwell held any property or assets of Tchacosh within United States territory. This determination is one of federal law. *Sabbatino,* 376 U.S. at 427, 84 S.Ct. at 939; *Tabacalera Severiano Jorge, S.A.,* 392 F.2d at 715; *Republic of Iraq,* 353 F.2d at 50–51.

In an attempt to resolve this issue, the parties offer arguments which could lead this court into a quagmire of legal technicalities. Tchacosh claims that Rockwell owes it a "debt," arising from contract claims, and looks to courts which, under the act of state doctrine, have determined that the situs of a debt is with the debtor. Rockwell, on the other hand, contends that no "debt" is owed Tchacosh; Tchacosh has only "disputed" and "unliquidated contract claims" against Rockwell. Rockwell maintains that we should look to the place of performance of the contract in order to determine whether to apply the extraterritorial exception. Tchacosh replies that it should not make a difference whether the "debt" is disputed or not, otherwise a defendant could easily evade the territorial limitations of the act of state doctrine by simply disputing the amount of the debt.

■ The teaching of the courts which have considered application of the act of state doctrine is that the doctrine is to be applied pragmatically and flexibly, with reference to its underlying considerations. *Sabbatino,* 376 U.S. at 428, 84 S.Ct. at 940; *United Bank Ltd.,* 542 F.2d at 874; *Tabacalera Severiano Jorge, S.A.,* 392 F.2d at 715. In determining the scope of the application of the extraterritorial exception to the doctrine, the Fifth Circuit observed:

The underlying thought expressed in all of the cases touching on the Act of State Doctrine is a common-sense one. It is that when a foreign government performs an act of state which is an

5. *But see* Henkin, "The Foreign Affairs Power of the Federal Courts: *Sabbatino,*" 94 Colum.L. Rev. 805, 828 (1964) (questioning the doctrine's

exclusive application to acts of foreign states executed within a state's territory).

accomplished fact, that is when it has the parties and the *res* before it and acts in such a manner as to change the relationship between the parties touching the *res*, it would be an affront to such foreign government for courts of the United States to hold that such act was a nullity. *Tabacalera Severiano Jorge, S.A.,* 392 F.2d at 715.

■ This observation provides guidance in this situation. It is clear, that under the facts of this case, Iran was in a position to "perform a *fait accompli* " over the acquisition of any money owed Tchacosh by Rockwell. Tchacosh was incorporated under the laws of Iran. The subcontract in issue was to be performed wholly within Iran. Iran retains any work completed. Payment was to be invoiced and made to Rockwell's office in Teheran. Disputes arising under the subcontract were to be resolved under Iranian law. The only connection the relationship between Tchacosh and Rockwell had to the United States is that Rockwell is incorporated under United States law, and has a place of business in this country.[6]

Tchacosh cites no cases in which a contract claim such as this one has been found to be a debt located in the United States for purposes of the act of state doctrine. Appellant cites to the court several cases in which accounts receivable for goods delivered to the United States were found to be debt with a situs here. *See Menendez,* 485 F.2d at 1364–65; *Tabacalera Severiano Jorge, S.A.,* 392 F.2d at 716. However, these cases are quite dissimilar factually from the instant case, and are not dispositive. Those cases involved Cuban exporters who had shipped tobacco to the United States before their companies were "intervened" by the Cuban government. In those cases, substantial performance of the contract had occurred in the United States,

before any acts of confiscation, and importers in the United States retained the goods from which the debt obligation arose. Similarly, the cases relied upon by appellant in which courts have declined to enforce the expropriation of trademarks, *e.g. Maltina,* 462 F.2d 1021, are not on point. In those cases, the trademarks had been used in connection with the distribution and sale of goods by the former owners in the United States well before the issuance of the foreign decrees. Appellant has advanced no case in which the nexus of the relevant relationship with a foreign country is so strong, and that with the United States so weak, in which a court has refused to give effect to the acts of the foreign state.

Moreover, the policies which underlie the act of state doctrine require its application in this case. Judicial determination of the invalidity of acts of foreign states are "often ... likely to give offense" to that state. *Sabbatino,* 376 U.S. at 432, 84 S.Ct. at 942. In this case, the relations between Tchacosh and Rockwell have a far greater impact upon Iran than upon the United States. Moreover, the Iran-United States Tribunal, an arbitral body set up to dispose of claims of United States nationals against Iran, has previously found that Tchacosh is a company under the management and control of Iran. *Rexnord, Inc., Claimant and the Islamic Republic of Iran, Tchacosh Co. and Iran Siporex Industrial and Manufacturing Works, Ltd., Respondents,* Case No. 132, Chamber 3, Award No. 21–132–3, reprinted in Iranian Assets Litigation Reporter, pp. 5659–67 (January 21, 1983).[7] (*See supra* n. 2.) Although the subject matter of the two cases differ, a judicial interpretation of the effect of the Iranian decrees as to Tchacosh which conflicts with that of the Tribunal carries the potential for interference with the diplomatic efforts of the Executive. *Cf. Ban-*

---

**6.** In determining whether to give effect to a confiscation, an important consideration has been whether a United States court has the power to enforce payment of the debt, *e.g., Menendez,* 485 F.2d at 1365. However, if jurisdiction over the debtor is all that is required, the

act of state doctrine is rendered a nullity as to parties in the United States.

**7.** It is noteworthy that in *Rexnord* the Tribunal found Tchacosh liable for obligations to a U.S. company which arose before the government took control.

co *Nacional de Cuba v. Sabbatino,* 376 U.S. at 431–32, 84 S.Ct. at 941–42.

We hold, therefore, that at the time of divestment, Rockwell held no property or assets of Tchacosh within United States territory, and that the Government of Iran fully executed any acquisition of property or assets owed by Rockwell to Tchacosh arising from their subcontract within its own territory. Under the act of state doctrine, the Iranian decrees divesting Hashemi of authority to bring suit on behalf of Tchacosh will be given effect.

Accordingly, the district court's grant of summary judgment in favor of Rockwell is affirmed.

AFFIRMED.

Norris, Circuit Judge, filed dissenting opinion.