874 F.2d 226
 ARKOMA ASSOCIATES, Plaintiff-Counter Defendant-Appellee,
v.
C. Tom CARDEN and Leonard L. Limes, Defendants-Appellants.
MAGEE DRILLING COMPANY, INC., Intervenor-Counter Plaintiff-Appellant,
v.
David HEPBURN, et al., Third Party Defendants-Appellees.
ARKOMA ASSOCIATES, Plaintiff Appellee Cross-Appellant,
v.
C. Tom CARDEN and Leonard L. Limes, Defendants-Appellants
Cross-Appellee,
and
Magee Drilling Company, Intervenor-Appellant Cross-Appellee.
 Nos. 87-3624, 87-3917.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 7, 1988.
 
 Richard K. Ingolia, Kenneth J. Berke, Berke & Ingolia, New Orleans, La., for Carden, Limes & Magee, etc.
 Mitchell J. Hoffman, Lowe, Stein, Hoffman & Allweiss, New Orleans, La., for Arkoma Assoc. et al.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ and JOHNSON, Circuit Judges, and BOYLE,* District Judge.
 POLITZ, Circuit Judge:
 
 
 1
 In these consolidated appeals Magee Drilling Company (MDC), C. Tom Carden, and Leonard L. Limes challenge the judgments in favor of Arkoma Associates, a partnership, rendered July 27, 1987 and September 17, 1987. Finding no reversible error, we affirm.
 
 Background
 
 2
 This litigation arises out of Arkoma's lease of two drilling rigs to MDC, a Texas corporation. MDC maintains that it was interested in buying or leasing two rigs capable of drilling to 7,500 feet. Discussions ensued between representatives of Arkoma and MDC. Arkoma avers that it made no representations as to drilling capacity and it gave MDC ample opportunity to inspect the rigs. MDC contends that Arkoma represented that the rigs were capable of drilling to 7,500 feet and that the principal rig components consisted of new or rebuilt parts.
 
 
 3
 On June 27, 1984 the parties executed a lease agreement which expressly declared that no warranties were given. Don Magee, president of MDC and an experienced oil and gas operative, signed the lease and initialed each page of an attached rig inventory list. Carden and Limes, also experienced oil men, joined Magee in personally guaranteeing the drilling company's obligations under the lease.
 
 
 4
 MDC employees inspected the rig equipment and supervised its transportation from Oklahoma to Texas. Upon arrival, damaged and missing parts and the wrong drill pipe were discovered, and the parties amended the lease to give MDC a credit of $45,000 and other concessions.
 
 
 5
 MDC used the rigs for over five months and drilled 19 wells. MDC contends that the rigs were defective and incapable of drilling to 7,500 feet, and that Arkoma knew of these defects. Arkoma counters that there is no evidence that the rigs could not drill to 7,500 feet because of defective equipment, that no unusual problems were encountered, and that MDC made no complaints until December 1984 when it tried to repudiate the lease.
 
 
 6
 On December 28, 1984 MDC notified Arkoma that it could no longer honor its obligations to its creditors. An attempt at compromise was unsuccessful and the following month MDC tendered the rigs to Arkoma. Arkoma accepted physical possession to protect its rigs from damage; however, it reserved its rights under the lease. MDC failed to make the February 1985 payment and Arkoma gave notice of default and accelerated the lease payments. Suit was then filed against Carden and Limes as MDC's guarantors.[1]
 
 
 7
 Carden and Limes, both Louisiana citizens, moved to dismiss for lack of diversity jurisdiction, contending that one of the partners of Arkoma was also a Louisiana citizen. The district court denied that motion but certified the jurisdictional question. We declined to accept the interlocutory appeal. Carden and Limes counterclaimed and MDC intervened, claiming violations of the Texas Deceptive Trade Practices Act.
 
 
 8
 Following a bench trial the court awarded Arkoma judgment in the amount of $467,806.25 plus interest and attorney's fees. The counterclaim and intervention were rejected. Carden, Limes, and MDC appeal.
 
 Analysis
 1. Jurisdiction
 
 9
 The threshold issue raised on appeal is whether Arkoma properly invoked diversity jurisdiction. As found by the trial court and uncontested on appeal, two of Arkoma's general partners are citizens of Arizona and the other two are citizens of Oklahoma. One partner--claimed by Arkoma to be a limited partner--is a citizen of Louisiana, as are Carden and Limes.
 
 
 10
 The citizenship of a general partnership is determined by the citizenship of all the partners. If Arkoma is a general partnership, complete diversity of citizenship between the parties-plaintiff and parties-defendant does not exist. On the other hand, if Arkoma is a limited partnership, the citizenship of the partnership is determined by the citizenship of the general partners only; the citizenship of limited partners is irrelevant. In the latter instance, the requirements of diversity jurisdiction are met. See Navarro Savings Association v. Lee, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980); Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp., 797 F.2d 238 (5th Cir.1986).
 
 
 11
 The district court found that Arkoma, organized under the laws of Arizona, was a limited partnership under the laws of that state. The district court noted that while Arkoma did not comply with all of the requirements of Arizona Revised Statutes Section 29-302,[2] it had, "in good faith, substantially complied with the provisions of the statute, and therefore is a valid limited partnership under Arizona law."
 
 
 12
 Appellants maintain that the district court erred in finding that Arkoma was a limited partnership because of its "substantial compliance" with Arizona law. The record reflects that Arkoma's certificate of partnership was filed with the recorder's office in Maricopa County, Arizona on September 1, 1981. An amended limited partnership agreement was filed with the office of the Arizona Secretary of State on September 10, 1982. A second certificate of amendment was filed after the instant suit was initiated. The limited partnership agreement describes the name, place of business and purpose of the partnership, the names of the four general partners, the capital contribution of the general and limited partners, the division of profits and losses between the general and limited partners, and the rights of the limited partners. The names and addresses of the limited partners were not listed.
 
 
 13
 To the extent that the district court's finding of substantial compliance is a finding of fact, it is not clearly erroneous; to the extent it is a conclusion of law it is not in error. Thus, the jurisdictional challenge falters. Our recent opinion in Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp. is dispositive. It rejects the arguments advanced by appellants. We find the requisite federal jurisdiction.
 
 
 14
 2. Viability of lease and guaranty agreements
 
 
 15
 MDC, Carden, and Limes vigorously contend that the lease and guaranty agreements were vitiated by Arkoma's fraud and nondisclosures. This challenge founders on the shoals of Fed.R.Civ.P. 52(a), which directs that findings of fact by the trial court are to be accepted unless shown to be clearly erroneous.
 
 
 16
 The trial court found: that Arkoma made "no material representations or omissions as to the quality, capacity or performance of the land drilling rigs"; that Magee and another MDC representative, Joe Claus, had an opportunity to inspect the rigs before the lease was signed; that Claus thoroughly inventoried the rigs prior to the signing; that MDC transported the rigs from Oklahoma to Texas; that after their arrival in Texas, the rigs were inspected and the parties settled a dispute over inappropriate pipe and missing and damaged components by giving MDC a substantial credit; and that 19 wells were drilled in the five months after delivery without any complaint from any MDC representative or Cardin, Limes, or Magee. It is too firmly established to require citation that a finding of fact may not be characterized as clearly erroneous unless the reviewing court has a definite and firm conviction that an error has been committed. Reviewing the trial court's findings in light of the evidence presented, and giving due weight to credibility assessments, we come to no such firm conviction.
 
 3. Surrender of the rigs
 
 17
 MDC, Carden, and Limes argue that Arkoma voluntarily terminated the lease when it accepted physical possession of the rigs in January, contending that Arkoma cannot both take possession of the property and enforce an accelerated rent provision. Appellants misconstrue Texas law.
 
 
 18
 Texas law provides that a lessor may repossess leased property and yet recover future rental payments due under the lease. Robinson v. Granite Equipment Leasing Corp., 553 S.W.2d 633 (Tex.Civ.App.1977) (writ ref'd n.r.e.). Future rentals in compensation for damages may be recovered; a pure penalty as such may not. MDC, Carden, and Limes invite our attention to Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484 (1952). We find it inapposite. Basey involved a stipulated damages provision which the court found to be a pure penalty because it was not related to the actual damages suffered. In Basey the lessor repossessed the property, accelerated future rentals, and relet the property without giving the prior lessee credit against future rentals. That is not the situation at bar where there was no reletting of the drilling rigs, although Arkoma attempted to do so. The recovery granted is appropriate because the accelerated rentals accurately represent Arkoma's true loss of rentals.
 
 4. Texas Deceptive Trade Practices claim
 
 19
 This issue need not long detain us. The trial court found that Arkoma did not misrepresent, either by representations or failures to disclose, "the quality, capacity or performance" of their two rigs. We have gauged that finding not clearly erroneous. Absent that factual basis, the claims under the DTPA lack vitality.
 
 
 20
 Finding no clearly erroneous finding of fact or error of law in the decisions of the district court, its judgments are AFFIRMED in all respects.
 
 
 
 *
 District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 It is not clear from the record why Don Magee was not included as a party-defendant
 
 
 [2]
 Section 29-302 of the Arizona Revised Statutes provides, in pertinent part:
 A. Two or more persons desiring to form a limited partnership shall:
 
 
 [1]
 Sign and acknowledge a certificate, which shall state:
 (a) The name of partnership.
 (b) The character of the business.
 (c) The location of the principal place of business.
 (d) The name and place of residence of each member; general and limited partners being respectively designated.
 (e) The term for which the partnership is to exist.
 (f) The amount of cash and a description of and the agreed value of the other property contributed by each limited partner.
 * * *
 (i) The share of the profits or the other compensation by way of income which each limited partner shall receive by reason of his contribution.
 [Subsections (j), (k), (l), (m), and (n) relate to various rights of limited partners.]
 
 
 [2]
 File for record the certificate in the office of the county recorder of the county in which the principal place of business is situated
 Effective July 24, 1982, section 29-302 was reenacted as section 29-308. A significant change required the filing of certificates of partnership with the Arizona Secretary of State.