**F. & H.R. FARMAN–FARMAIAN CONSULTING ENGINEERS FIRM and Farough Farman–Farmaian, Plaintiffs–Appellants,**

v.

**HARZA ENGINEERING COMPANY, Defendant–Appellee.**

No. 88–3133.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1989.

Decided Aug. 17, 1989.

As Amended Aug. 24, 1989.

Rehearing Denied Sept. 20, 1989.

---

Ann E. Acker, Donna Ross Daniels, Lenore L. MacDonald, Chapman & Cutler, Chicago, Ill., John Vanderstar, Covington & Burling, Washington, D.C., for plaintiffs-appellants.

Gary L. Prior, William C. Meyers, McDermott, Will & Emery, Chicago, Ill., Jerry D. Anker, Wald, Harkrader & Ross, Washington, D.C., for defendant-appellee.

Before WOOD, Jr. and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

This lawsuit—a bit of fallout from the Iranian Revolution—was filed under the alienage component of the federal diversity jurisdiction. 28 U.S.C. § 1332(a)(2). The plaintiffs are F. & H.R. Farman–Farmaian Consulting Engineers Firm ("Consulting Firm," for short), an Iranian corporation, and Farough Farman–Farmaian, an Iranian citizen now resident in London. The defendant is Harza Engineering Company, a Delaware corporation whose principal place of business is in Chicago.

Before his ouster by the revolutionary regime, Mr. Farman–Farmaian was the Consulting Firm's managing director and a twenty percent shareholder. He is suing

on his own behalf and that of the other owners of the firm—all of whom are members of the Farman–Farmaian family and all of whom gave him a broad power of attorney to prosecute this suit—to collect a debt of some $2 million that Harza allegedly owes the Consulting Firm for work that the firm did for Harza in Iran before the revolution. Harza moved for summary judgment on the ground that the act of state doctrine bars the suit. The district judge agreed; and although the judgment order recites that it is dismissing the complaint, the judge's intent to dismiss the entire suit is plain, which is enough to satisfy the final decision rule of 28 U.S.C. § 1291. See, e.g., *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 527–28 (7th Cir. 1988). But we repeat our plea that district courts head off spurious issues of appellate jurisdiction by complying with the letter of Rule 58. See, e.g., *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir.1988).

Harza, beginning in the 1960s, had become the prime contractor on a number of major water development projects in Iran, and had engaged the Consulting Firm to perform services for it in connection with these projects. The record does not disclose the nature of the services but all were performed in Iran. The Consulting Firm mailed the invoices for these services to Harza's headquarters in Chicago. Harza had no office in Iran, although the director of its Iranian projects frequently visited Iran for extended periods and while there had the use of an office that the Consulting Firm provided. Harza paid the Consulting Firm's invoices sometimes in dollars but usually in Iranian currency, and the Consulting Firm deposited all the payments in Iranian banks. Just as Harza had no office in Iran, the Consulting Firm had no office in the United States. The only officer or employee of the firm ever to visit Harza's office was Mr. Farman–Farmaian himself, who had family in Chicago.

In 1979 the revolutionary government seized the Consulting Firm and the next year Harza stopped doing business with Iran because the Iranian government refused to pay Harza's bills. Later the Iranian government decided to dissolve the Consulting Firm—without paying any compensation to its owners—and a board of liquidators was appointed. By this time most of the Farman–Farmaian family wisely had left Iran.

Years later Harza obtained an award from the Iran–United States Claims Tribunal for services rendered to the Iranian government before the Revolution. The plaintiffs claimed that under Harza's contract with the Consulting Firm some $2 million of the Claims Tribunal's award was due to them for services the Consulting Firm had rendered Harza on projects covered by the award. When Harza refused to pay, the plaintiffs filed this suit. Neither the board of liquidators nor any other representative of Iran has filed a claim to the $2 million.

The plaintiffs argued in the district court that the seizure of the Consulting Firm violated Iranian law, but they have abandoned that contention (which the district judge had rejected) on appeal. And they concede that the act of state doctrine generally forbids an American court to question the act of a foreign sovereign that is lawful under that sovereign's laws. To defeat Harza's act-of-state defense they invoke the "extraterritoriality" exception. Well discussed in *Tchacosh Co. v. Rockwell International Corp.*, 766 F.2d 1333, 1336–37 (9th Cir.1985), the exception lifts the bar to suit in cases in which the act of state (1) is confiscatory, and hence contrary to strong American public policy, yet (2) could not be completed within the territory of the foreign sovereign. It is the second element of the exception that is at issue in this appeal; the first is not contested. See, e.g., *Republic of Iraq v. First National City Bank*, 353 F.2d 47, 51–52 (2d Cir.1965) (Friendly, J.). What the revolutionary government confiscated was the Consulting Firm's claim against Harza for payment for the services the firm had rendered Harza before the firm was seized and its property confiscated. The plaintiffs argue that the revolutionary government could not seize this claim because the debt giving

rise to it was "in Chicago" rather than "in Iran."

◼ Before addressing the merits we must determine whether there is federal jurisdiction. The rule of complete diversity—that no plaintiff and no defendant may be a citizen of the same state—applies to alienage cases as well as to ordinary diversity cases. *Newman–Green, Inc. v. Alfonzo–Larrain,* —— U.S. ——, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989). The Consulting Firm is an Iranian corporation and Mr. Farman–Farmaian is also an Iranian citizen, while Harza is for purposes of the diversity jurisdiction a citizen of both Delaware and Illinois. See 28 U.S.C. § 1332(c). So far, so good. The problem is that Mr. Farman–Farmaian is suing not only on his own behalf but also on behalf of the firm's other shareholders, and the pleadings do not indicate their citizenship. Supplemental briefs on jurisdiction filed at our request reveal that one of the shareholders is an Illinois citizen and was at the time the suit was filed. If she is considered a plaintiff, complete diversity is lacking, and with it federal jurisdiction.

◼ Ordinarily the relevant citizenship for diversity purposes is that of the named plaintiff rather than that of the persons on whose behalf he is suing. Obviously this is true of a suit by a corporation—the corporation is the "person" whose citizenship counts, not the shareholders. It was true of suits by trustees and executors, see *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980); *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 186, 52 S.Ct. 84, 85, 76 L.Ed. 233 (1931), until the enactment last year of 28 U.S.C. § 1332(c)(2). It is true of class actions—only the citizenship of the named plaintiffs matters for diversity purposes. See *Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969); *In re "Agent Orange" Product Liability Litigation,* 818 F.2d 145, 162 (2d Cir.1987). And—a close analogy to the present case—it is true of stockholder derivative suits; the citizenship of the named plaintiff is all that counts even though he is suing on behalf of the corporation. See *Doctor v.*

*Harrington,* 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606 (1905); *Venner v. Great Northern Ry.,* 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666 (1908); *Van Gelder v. Taylor,* 621 F.Supp. 613, 621 (N.D. Ill.1985). On the other hand, the citizenship of a partnership is the citizenship of all the partners, not just of the general partner, despite the close analogy between limited partners and corporate shareholders. So at least we held in *Stockman v. LaCroix,* 790 F.2d 584, 587 (7th Cir.1986), and *Elston Investment, Ltd. v. David Altman Leasing Corp.,* 731 F.2d 436 (7th Cir.1984), although there is a conflict among the circuits on the question which the Supreme Court has granted certiorari to resolve. See *Arkoma Associates v. Carden,* 874 F.2d 226, 228 (5th Cir.1988), cert. granted, —— U.S. ——, 109 S.Ct. 1952, 104 L.Ed.2d 421 (1989). In distinguishing the partnership case we pointed out in *Elston* that a partnership has no legal identity separate from that of the partners. See 731 F.2d at 438. This distinction invites the following generalization: in deciding whether the required diversity is present, the court will confine inquiry to the citizenship of the named parties. If there is the required complete diversity of citizenship among them, the question whether the suit can be maintained will depend on whether the named parties are the real parties in interest and whether any indispensable party has been left out. See Fed.R.Civ.P. 17(a), 19(b).

◼ Under this approach, since Mr. Farman–Farmaian is a named plaintiff but the other owners of the Consulting Firm are not, the citizenship of the other owners is irrelevant. True, Mr. Farman–Farmaian's representative capacity is *sui generis.* He is not a trustee or guardian of the other shareholders, nor is this a class action or a stockholders' derivative suit. And the plaintiffs sensibly do not argue that the grant of a power of attorney makes the grantee rather than the grantor the party for purposes of determining whether there is diversity—a position that would as a practical matter enable any suit to be maintained as a diversity suit. There is, however, an analogy between this case and the

creditor's bill, an old form of class action in which one creditor sued a debtor as representative of all the debtor's creditors and the proceeds of the suit were divided among those creditors who filed an appearance. See *In re American Reserve Corp.*, 840 F.2d 487, 490 (7th Cir.1988). Even if the analogy is rejected, and with it Farman–Farmaian's representative status, all that this would mean is that he might not be able to sue on behalf of the other owners. He could still sue in his own right as a twenty percent shareholder, for no one argues that the other owners are indispensable parties to this suit.

If all this is wrong, still the Supreme Court's recent decision in *Newman–Green* authorizes us to drop a party at the appeal stage in order to preserve diversity jurisdiction. The plaintiffs invite us to drop Mr. Farman–Farmaian, the individual party, if we have any doubts about jurisdiction with him in the case. With him dropped, this would just be a suit between an Illinois corporation and a foreign corporation. As a matter of fact we can think of no reason other than caution why the plaintiffs' counsel thought he needed an additional plaintiff besides the Consulting Firm. The debt is owed by Harza to the firm, not to the firm's owners and not to the firm's managing director and attorney-in-fact (in the power-of-attorney sense), Farough Farman–Farmaian. It is true that the owners have been ousted and have no desire to see the debt paid to the liquidators in Iran, but on the other hand they cannot succeed in this suit unless they show that the court should disregard the seizure in adjudicating the Consulting Firm's claim against Harza. And if the seizure is disregarded for these purposes, then it is the former owners and not the liquidators who will enjoy the benefit of the judgment, since any money judgment rendered in this suit would be paid to Farman–Farmaian as the managing director of the pre-seizure Consulting Firm.

■ The principle that underlies (or perhaps merely restates) this conclusion is that corporations expropriated abroad continue to exist with capacity to sue in the United States, provided of course they can show that the court can disregard the expropriation without violating the act of state doctrine. The principle was clearly stated by Chief Judge Cardozo in *Petrogradsky Mejdunarodny Kommerchesky Bank v. National City Bank*, 253 N.Y. 23, 28, 170 N.E. 479, 481 (1930), and even more clearly in a slightly later decision by the New York Court of Appeals, *Vladikavkazsky Ry. v. New York Trust Co.*, 263 N.Y. 369, 378–79, 189 N.E. 456, 460 (1934). It is implicit in a number of other cases as well—in particular *Baglin v. Cusenier Co.*, 221 U.S. 580, 594–97, 31 S.Ct. 669, 672–74, 55 L.Ed. 863 (1911); *Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.*, 392 F.2d 706 (5th Cir.1968); *Compania Ron Bacardi, S.A. v. Bank of Nova Scotia*, 193 F.Supp. 814 (S.D.N.Y.1961). The principle is obscured because ordinarily, as here, an owner, assignee, or representative is named as a plaintiff in order to obviate disputes over the corporation's capacity arising from the ambiguous status created by the expropriation. See, e.g., *Tchacosh Co. v. Rockwell International Corp.*, *supra*, 766 F.2d at 1335. But the soundness of the principle cannot be doubted after the rejection, in such cases as *Maltina Corp. v. Cawy Bottling Co.*, 462 F.2d 1021 (5th Cir.1972), of the proposition that "a foreign sovereign's dissolution of its own corporation is dispositive of the corporation's power to exercise dominion over assets located within the United States simply because the dissolution of the corporation is an 'act of a foreign state, done within its own territory.'" *Id.* at 1026. The rejection of this proposition *is* the extraterritoriality exception to the act of state doctrine; and unless it is rejected, the plaintiffs could not win this case even if all the owners of the Consulting Firm were named as plaintiffs. (The asset claimed to be "located in the United States" is the debt of Harza to the Consulting Firm.)

■ So, to conclude on the jurisdictional issue, we do not think the citizenship of the persons represented by Mr. Farman–Farmaian is material, but if this were determined to be wrong we would drop him as a plaintiff to preserve jurisdiction and there would be no effect on the merits. Of

course a dismissal of Mr. Farman–Farmaian on jurisdictional grounds would, unless denominated with prejudice, leave him free in principle to bring a fresh suit in state court; a dismissal on the merits would not. But as in *Newman–Green* fairness to the other side would dictate dismissal with prejudice; the power to dismiss parties to preserve jurisdiction should not be used to give a dismissed party a second bite at the apple. So the alternative jurisdictional approaches that we have examined really would have the same practical consequences.

We come at last to the merits. The exception to the act of state doctrine on which the plaintiffs rely requires that the act of confiscation not have been complete within the confiscating state. Equivalently, if a foreign state has made a confiscatory "taking," an act offensive to American proprieties, American courts will not lend their assistance to making the confiscation effective. So if the Consulting Firm had assets in Chicago, and the Iranian board of liquidators brought suit here to obtain control of those assets in conformity with the Iranian decree seizing the firm, the suit would fail. See, e.g., *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 666–67 (2d Cir.1988); *United Bank Ltd. v. Cosmic International, Inc.*, 542 F.2d 868 (2d Cir. 1976). But it is the exception that fails if the confiscation was complete within the foreign state in the sense that all of the firm's assets and operations were there, and the victim is trying to get an American court to undo the confiscation. That is this case. The Consulting Firm was an Iranian company all of whose assets and operations were in Iran; the revolutionary regime seized the firm and its assets; one of those assets was the firm's claim against Harza for payment for the services that the firm had rendered Harza in Iran. The *Tchacosh* case, cited earlier, rejected the extraterritoriality exception to the act of state doctrine on facts almost identical to those of the present case. The two Second Circuit decisions that we have cited, *Bandes* and *United Bank*, look the other way, but are distinguishable because in each a shipment of goods to or from the U.S. was contemplated. In this case, all the services under the contract were to be performed in the foreign country.

Granted, to describe the Consulting Firm's claim for payment of Harza's debt to it as an asset located in Iran, as we have done, may be thought to beg the question. A debt (like a word, a number, an idea) has no space-time location; it is not a physical object, and efforts to treat it as such, like efforts in conflicts of law jurisprudence, now largely abandoned, see, e.g., Restatement, Second, Conflict of Laws, § 188 (1971), to find the site of a contract, seem bound to fail. Cf. Leflar, American Conflicts Law § 183 (1977). This acknowledgment does not much help the plaintiffs, though, since they argue that the debt was "in" Chicago—a clearly untenable proposition. Harza's liability was the Consulting Firm's asset, and it is strange to describe the Consulting Firm as having an "American" asset by virtue merely of having a claim against an American company for services performed on that company's behalf in Iran.

The metaphysics and semantics of the issue to one side, the plaintiffs' submission that the debt is located in Chicago would if accepted greatly reduce the accepted scope of the act of state doctrine—a pertinent although not necessarily a controlling consideration. A dispute between an Iranian corporation doing business entirely in Iran, and the government of Iran, could pop up in an American court merely because the corporation was owed some money by an American firm. In response to Harza's expression of concern that if it pays the Consulting Firm it may be faced with a claim for the same amount by the Iranian liquidators, the plaintiffs argue that Harza could have interpleaded the Iranian liquidators. Exactly so; and then this court would have been required to determine the legality under Iranian law of the seizure of an Iranian company in and by Iran.

It is just such litigation that the act of state doctrine seeks to keep out of our courts in an effort to minimize interference with the foreign relations of the United States, the conduct of which has been

lodged elsewhere in the government. What is at issue in this case is not the rights or interests of an American company (Harza is American, but its only interest is in avoiding double payment, and is protected by applying the act of state doctrine to bar this lawsuit) but the propriety of dealings between the Iranian government and an Iranian corporation. With the American interest so attenuated, considerations. of comity—that is, of sensitivity to the potential frictions between proud sovereigns—come to the fore; and it is those considerations, and the resulting concern with the judiciary's stepping on the State Department's toes, that inform the modern understanding of the act of state doctrine. See, e.g., *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 431–33, 84 S.Ct. 923, 941–43, 11 L.Ed.2d 804 (1964); Restatement of the Foreign Relations Law of the United States, § 443, comment a (1987). For an American court to say to Iran, "We won't pay any attention to your seizure of the Consulting Firm without compensation to the owners, because it's the sort of act that is abhorrent to Americans," would be a slap in the face of the Iranian regime. Such slaps would be frequent if the happenstance of being owed money by an American was enough to waive the act of state doctrine. It is true that the government of Iran is not a party to this suit, but we said slap in the face, not slap in the pocketbook—and there could be that too, because the liquidators appointed by the government have a potential claim against Harza as the successors to the owners of the Consulting Firm, although it seems unlikely that the claim will ever be pressed.

Granted, the slap would sting no less sharply if the Consulting Firm had had assets in the United States or if its contract with Harza had contemplated transactions between the U.S. and Iran rather than wholly within Iran; and considerations of territoriality may seem as anachronistic as they are elusive as a guide to the boundaries of the act of state doctrine. But the United States has an independent concern with protecting property and transactions (perhaps even contemplated transactions, as in the two Second Circuit cases) within its borders; that is the interest which underlies the extraterritorial exception to the act of state doctrine. That interest is not present here. Despite the possibility (no more than that, for Harza does not concede its indebtedness, and the liquidators may still make a claim against it) of a windfall for Harza, we do not believe ourselves to be authorized to disregard an act of the Iranian state against an Iranian firm the contemplated and actual operations of which were confined to Iran, which had no assets outside of Iran, and which was seized in Iran pursuant to locally valid Iranian law.

AFFIRMED.