985 F.2d 563
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Penelope POLYCHRON, as Special Administrator for the Estate
of JEFFREY RODMAN, deceased, Plaintiff/Appellant,
v.
AIRGO, INCORPORATED and Leslie Erb, Defendants/Appellees.
 No. 91-2835.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 2, 1992.
Decided Feb. 2, 1993.
 
 Before EASTERBROOK and KANNE, Circuit Judges, and PELL, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 In this diversity of citizenship case, Penelope Polychron appeals from a partial summary judgment entered in favor of Leslie Erb and Airgo, Inc ("Airgo").
 
 I.
 
 2
 After her son died in a skydiving accident, Polychron sued five defendants on his behalf in federal district court. Because Polychron's claims were grounded in Illinois negligence law, she pleaded diversity of citizenship as the basis for federal subject matter jurisdiction. 28 U.S.C. § 1332.
 
 
 3
 In support of her diversity allegations, Polychron claimed that the decedent, who attended school in Missouri, maintained a domicile in Pennsylvania. She further alleged that defendant Dave Verner was a domiciliary of Illinois and that defendant Airgo was "a foreign corporation licensed to and doing business in the State of Illinois." She labeled defendant Washington University a not-for-profit corporation registered in Missouri, and Washington University Student Union ("the Union") "an organization which is financially supported by Washington University and/or encouraged and fostered by the University." She never discussed the citizenship of defendant Erb.
 
 
 4
 Instead of challenging the district court's jurisdiction, Erb and Airgo moved for summary judgment. The court granted partial summary judgment in favor of the two defendants, noting that "[t]here being no just reason for delay, the Clerk is directed to enter judgment in favor of the [two defendants]." Although the court took this language from Fed.R.Civ.P. 54(b), the rule allowing immediate appeal from a partial summary judgment, the court never mentioned the rule in its order. The clerk then entered a "summary judgment in a civil case" without mentioning Rule 54(b) or the judge's finding of "no just reason for delay." Despite these deficiencies, the parties immediately appealed the summary judgment.
 
 
 5
 At oral argument, this court informed the parties that we could not determine whether the district court possessed diversity jurisdiction or whether it had complied with Rule 54(b). In an order of October 5, 1992, we asked the parties to brief these jurisdictional issues by October 19, 1992. On October 19, the appellee's responded to our request with a jurisdictional memorandum and a motion "to file amendments to the answers by interlineation[1]." In the motion and memorandum, appellee Leslie Erb admitted that he was a citizen of Illinois, and Appellee Airgo, Inc. admitted that it was a Delaware corporation with its principal place of business in Illinois. The appellees never addressed the citizenship of the other defendants to this suit. On October 26, 1992, the appellant filed a jurisdictional memorandum, which discussed one of the other defendants. It alleged that Washington University Student Union was an unincorporated association. The memorandum also claimed that the decedent maintained a domicile in Pennsylvania immediately before his death, but it never discussed defendants Erb, Verner, or Airgo.
 
 II.
 
 6
 This appeal raises two crucial jurisdictional issues: the finality of the judgment and the diversity of the parties. We must consider such jurisdictional issues on our own initiative, despite the parties' failure to address jurisdiction in their briefs. Mutual Serv. Casualty Ins. Co. v. Country Life Ins. Co., 859 F.2d 548, 550 (7th Cir.1988); United States Gen., Inc., v. Albert, 792 F.2d 678, 680 (7th Cir.1986); Fed.R.Civ.P. 12(h)(3).
 
 A. Jurisdiction Under Rule 54(b)
 
 7
 Although she recognizes that this court possesses jurisdiction over only final judgments, 28 U.S.C. § 1291, Polychron has appealed from a partial summary judgment. She may appeal this intermediate order only if the district court has complied with the requirements of Fed.R.Civ.P. 54(b). Rule 54(b) states:
 
 
 8
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
 
 
 9
 Id.
 
 
 10
 In Polychron's case, the court failed to enter a judgment complying with Rule 54(b). Although the judge stated in his opinion "[t]here being no just reason for delay, the Clerk is directed to enter judgment in favor of [Erb and Airgo]," the district court issued only a document granting "summary judgment" in favor of the defendants[2]. It never issued a separate document of judgment.
 
 
 11
 In Amalgamated Meat Cutters, however, this court developed an exception to the usually strict requirements of Rule 54(b). Amalgamated Meat Cutters & Butchers Workmen v. Thompson Farms Co., 642 F.2d 1065, 1072 (7th Cir.1981). The district court in Meat Cutters also failed to enter a judgment under Rule 54(b). Id. at 1068. Despite this problem, both parties proceeded as if the court had certified the case under Rule 54(b); the appellants filed a notice of appeal, and both parties filed briefs. Id. After considering these circumstances, we held that "since it is plain that neither party was prejudiced ... the absence of a separate document of judgment and docket entry [does not deprive] us of jurisdiction[3]." Id. at 1072 (citing Bankers Trust Co. v. Mallis, 435 U.S. 381 (1978)).
 
 
 12
 This same exception applies to Polychron's case, where the court issued a defective judgment under Rule 54(b), but the parties proceeded with the appeal. See id. We assume that neither party has suffered prejudice because both parties have urged us to accept jurisdiction and to decide this case on the merits.
 
 
 13
 While we reach the conclusion that we should exercise jurisdiction over this appeal, we do so with hesitancy. On the other hand, but for the omission of a reference to Rule 54(b) in the judge's order and the admission of a clerical order, we are placed in the position of deciding whether an appeal had been effected. All of the circumstances being consistent otherwise with a final judgment, to deny that effect borders on denigrating a technicality to an absurdity.
 
 B. Diversity Jurisdiction
 
 14
 Absent proof of diversity jurisdiction, this court lacks subject matter jurisdiction over this negligence suit. See Wilson v. Humphreys (Cayman) Ltd., 916 F.2d 1239, 1242 (7th Cir.1990), cert. denied, 111 S.Ct. 1415 (1991). Diversity jurisdiction exists only when the parties are completely diverse--no plaintiff and no defendant may be citizens of the same state. Carden v. Arkoma Assoc., 494 U.S. 185, 187 (1990); F. & H.R. Farman-Farmaian Consulting Engrs. Firm v. Harza Eng'g Co., 882 F.2d 281, 284 (7th Cir.1989). The existence of complete diversity is determined at the time that the complaint is filed.[4] Freeport-McMoRan, Inc. v. K.N. Energy, Inc., 111 S.Ct. 858, 860 (1990); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989).
 
 
 15
 The plaintiff has never proven her own citizenship. In cases like Polychron's, where the plaintiff is an administrator for an estate, "the legal representative of the estate of the decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332. The decedent in this case, Jeffrey Rodman, originally resided Pennsylvania, but attended college in Missouri. As a student, Rodman retained the citizenship of his parents until he changed his domicile. Holmes v. Sopuch, 639 F.2d 431, 433-34 (8th Cir.1981); see also Gilbert v. David, 235 U.S. 561 (1914). Rodman changed his domicile only if (1) he was physically present in another state and (2) he intended to remain there indefinitely. Scoggins v. Pollock, 727 F.2d 1025, 1026 (11th Cir.1984).
 
 
 16
 We know that, at the time of Rodman's death, he lived in Missouri, but we do not know whether Rodman intended to remain in the state. When we attempted to determine Rodman's intentions by asking the parties "where the decedent was registered to vote and what state issued his driver's license," we received an unsatisfactory response. The plaintiff alleged only that "no evidence was developed in the record regarding the State where the Decedent voted or what State had issued his driver's license." The plaintiff apparently did not understand that she may prove jurisdiction on appeal. Mutual Serv., 859 F.2d at 550; see also 28 U.S.C. § 1653.
 
 
 17
 Moreover, neither party has established the citizenship of all the defendants named in the complaint. The most problematic of these defendants is the Washington University Student Union. The Union is, as the plaintiff points out, an unincorporated association "comprised of each student at Washington University that pays fees." As an unincorporated association, the Union possesses the citizenship of each of these members. Elston Invest., Ltd. v. David Altman Leasing Corp., 731 F.2d 436, 437 (7th Cir.1984). Thus, if any of the Union's members maintains a domicile in Pennsylvania, this common citizenship will preclude diversity jurisdiction. This is true even though the Union is not a party to this appeal. Because diversity is determined at the time the complaint is filed, a plaintiff cannot create appellate jurisdiction by filing an appeal against only the diverse parties.
 
 
 18
 We are now not treating a highly technical rule. If diversity did not exist, the appeal simply is not properly here. The parties not only in oral argument but by the order we issued on October 5 had it made clear to them that we were concerned as to whether diversity existed.
 
 
 19
 The order we issued required the parties to address the citizenship of all parties. This under the circumstances could only have referred to all of the parties in the suit which was filed, whether some of them were before this court of appeals or not. Nevertheless, the appellees elected to limit their discussion to defendants Erb and Airgo as if "complete diversity" meant diversity between the parties to the claims that are the subject of the Rule 54 appeal. The October 5 order also called for the parties to address specifically:
 
 
 20
 b. Of what state are defendants Erb and Verner citizens?
 
 
 21
 d. What kind of organization is the Washington University Student Union? If it is not a corporation, what is the citizenship of each of its members or partners?
 
 
 22
 No one addressed the citizenship of Verner but the plaintiff-appellant in a belated response did address the citizenship of the Washington University Student Union as follows:
 
 
 23
 Washington University Student Union, hereinafter referred to as "Union" is clearly an unincorporated association. It is comprised of each student at Washington University that pays student fees. To establish jurisdiction pursuant to 28 U.S.C. 1332, it is necessary to consider the citizenship of each member and to specifically allege each member's diversity relative to the Plaintiff. Loss v. Blankenship, (C.A.7th 1982) 673 F.2d 942. In Loss above, this Court reasoned that because the local could sue in its own name only the citizenship of the local members was considered, not the membership of each member of the National. Here, however, application of those same legal principals [sic] would require diversity as to each member of the "Union" at the time these pleadings were filed. Under applicable State law, the "Union" has several thousand members. Obviously, Plaintiff would never be able to establish the Decedent's diversity as to each member.
 
 
 24
 In a conclusion to this response, the plaintiff-appellant agreed that this court did not have subject matter jurisdiction under Section 1332. In light of the diversity problem presented by the Union and its membership of several thousand students, this concession by the plaintiff-appellant is understandable. According to the current World Almanac, Washington University has an enrollment of more than 9500 students. We know at least one member of the Union came from Pennsylvania. With an enrollment of this size in a nationally known university, it would be surprising if there were not other members of the Union who maintained a domicile in Pennsylvania. It was the plaintiff who made the Union a party. No amendments to the complaint concerning the Student Union have been submitted.
 
 
 25
 In some respects this case tracks a recent decision of this court in America's Best Inns, Inc. v. Best Inns of Abilene, 980 F.2d 1072 (7th Cir.1992). There the parties filed inconclusive post-argument jurisdiction statements. Id. As we did in American Best, we accordingly vacate the judgment and the case is REMANDED with instructions to dismiss for lack of subject matter jurisdiction.
 
 
 
 [1]
 We now grant the appellee's motion to amend its answer by interlineation. 28 U.S.C. § 1653
 
 
 [2]
 In the future, we trust that the Clerk of Court for the Southern District of Illinois will comply with our requirements for judgments under Rule 54(b)
 
 
 [3]
 Although Meat Cutters is a 1981 opinion, this circuit still regards it as valid law. The case was cited and distinguished in a case recently issued by our circuit. See Granack v. Continental Casualty Co., 977 F.2d 1143, (7th Cir.1992)
 
 
 [4]
 A court may, however, allow a defendant to amend his complaint to drop non-diverse parties. Fed.R.Civ.P. 21. In such cases, the amendment relates back to the date of the original pleading, Fed.R.Civ.P. 15(c), and we treat the amended complaint, for diversity purposes, as if it were the original complaint