James A. McCLURE, United States Senator, Idaho, Plaintiff,

v.

James Earl CARTER, President of the United States; and Abner J. Mikva, Defendants.

Civ. No. 79-1340.

United States District Court, D. Idaho.

May 5, 1981.

Iver J. Longeteig, Runft & Longeteig, Chartered, Boise, Idaho, David H. Martin, Santarelli & Gimer, Washington, D. C., for plaintiff.

Neil H. Koslowe, Sp. Litigation Counsel, Civil Division, Dept. of Justice, Washington, D. C., for defendants.

Before FLETCHER, Circuit Judge, and McNICHOLS and TAYLOR, District Judges, sitting as a Special Three-Judge District Court.

## DECISION

This case comes before this three-judge court on cross-motions for summary judgment. The amended complaint to which the motions are addressed challenges the appointment of former Congressman Abner J. Mikva to a position as a circuit judge for the United States Court of Appeals for the District of Columbia Circuit. The relevant portions of the statute under which the challenge is brought, Act of October 12, 1979, Pub.L.No. 96–86, § 101(c), 93 Stat. 656 (not codified), are set out in the margin.[1] The plaintiff, Senator McClure, asserting that the salaries of federal judges were increased during defendant Mikva's term in Congress, claims that Judge Mikva's[2] nomination, confirmation, and appointment as a circuit judge were in violation of Article I, section 6, clause 2 of the United States Constitution (the Ineligibility Clause).[3]

1. Section 101(c) provides in relevant part:

Any additional payment [to federal officials] under existing law is not to be construed as an increase in salary or emoluments within the meaning of Article I, section 6, clause 2 of the Constitution, except that:

(1) Any Member of Congress, whether he voted to confirm or not to confirm the appointment of any judge appointed during the 96th Congress to the United States Court of Appeals for the District of Columbia, or whether he abstained from, or was not present for such vote, may bring a civil action in the United States District Court for the District of Columbia or in any United States District Court in the State he represents to contest the constitutionality of the appointment and continuance in office of said Circuit Judge on the ground that such appointment and continuance in office is in violation of Article I, section 6, clause 2 of the Constitution;

(2) The designated United States District Courts shall have exclusive jurisdiction, without regard to the sum or value of the matter in controversy, to determine the validity of such appointment and continuance in office;

(3) Any action brought under this section shall be heard and determined by a panel of three judges in accordance with the provisions of section 2284 of title 28, United States Code. Any appeal from the action of a court convened pursuant to such section shall lie to the Supreme Court; and

(4) Any judge designated to hear any action brought under this section shall cause such action to be in every way expedited.

Senator McClure asks that we direct the President to notify defendant Mikva that his appointment was in violation of the Constitution, and that we notify defendant Mikva that his appointment was void *ab initio* and that he must vacate his office. The threshold question before us is whether we have jurisdiction to hear the case. We cannot reach the merits of Senator McClure's challenge unless we answer that question affirmatively.

## BACKGROUND

The procedural posture of this case and the events in its background provide a context that is helpful in analyzing and attaching appropriate legal significance to the contentions made by the parties. The procedural steps taken and a summary of pertinent portions of the pleadings are set forth in the margin.[4]

2. While plaintiff insists on referring to defendant Mikva as "Mr.," his proper title is "Judge" until determined otherwise.

3. Article I, section 6, clause 2 of the United States Constitution provides in relevant part:

No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been increased during such time;
. . . .

4. The original complaint was filed in the United States District Court for the District of Idaho on September 25, 1979, by plaintiff McClure, a United States Senator from the State of Idaho. Jurisdiction was alleged under 28 U.S.C. §§ 1331 (federal question) and 2201 (declaratory judgment). The original defendants were James Earl Carter, President of the United States, and J. Stanley Kimmitt, Secretary of the United States Senate. The complaint sought a declaration that then-Congressman Abner J. Mikva was constitutionally ineligible for appointment to the United States Court of Appeals for the District of Columbia Circuit. The suit also sought an injunction against defendant Kimmitt to prevent him from communicating the results of the United States Senate's vote of confirmation of Abner Mikva to the President.

On September 26, 1979, defendant Carter signed the commission appointing Abner J. Mikva a United States Circuit Judge for the District of Columbia Circuit. On October 16,

Congressman Abner J. Mikva was nominated by President Carter as circuit judge for the District of Columbia Circuit. A number of senators, including Senator McClure, opposed the appointment. Indeed, a number of these senators, again including Senator McClure, voiced their opposition on the Senate floor,[5] relying in their arguments on their belief that then-Congressman Mikva was philosophically unsuited to the job, as well as on their view that he was constitutionally ineligible for appointment because of the proscriptions of the Ineligibility Clause. These arguments failed to persuade a sufficient number of their fellow senators, and a majority of the Senate voted to confirm defendant Mikva as judge on September 25, 1979. 125 Cong. Rec. S13363 (daily ed. Sept. 25, 1979).

After the Senate voted to confirm Judge Mikva, Senator McClure and others proposed to the Senate the jurisdictional statute under which Senator McClure now sues. The Senate attached the proposed statute as a rider to an appropriation bill on October 10, 1979, 125 Cong.Rec. S14320, S14325 (daily ed. Oct. 10, 1979), and the House of Representatives agreed to it two days later. *Id.* H9081 (daily ed. Oct. 12, 1979).

The jurisdictional statute is unusual in several respects. First, it sets out a single substantive ground for challenging a new judicial appointment—violation of the Ineligibility Clause. A challenge to a judicial appointment on any other ground must be brought under some other statute. Second, it limits both in time and by institution the judicial appointments that may be challenged under the statute. It authorizes challenges to only those judicial appointments made during the 96th Congress and only those made to the United States Court of Appeals for the District of Columbia Circuit. A challenge to a judge appointed during any other Congress or to any other court must be brought under some other statute. Perhaps not coincidentally, the only judicial appointment that fits within the statute's limitations and might be subject to challenge on Ineligibility Clause grounds is that of defendant Mikva. Third, the statute authorizes suits by United States senators and members of the House of Representatives, irrespective of whether the senators voted for or against the appointment or, in the case of members of the House, voted at all. Fourth, the statute

1979, the plaintiff moved to dismiss defendant Kimmitt. The motion was granted.

The amended complaint was filed on November 6, 1979, once more naming President Carter as a defendant and adding Abner J. Mikva as a defendant. Jurisdiction was again premised on 28 U.S.C. §§ 1331 and 2201 but was additionally alleged under section 101(c) of the Act of October 12, 1979, Pub.L. No. 96–86, 93 Stat. 657 (not codified). Plaintiff requested a three-judge court pursuant to the terms of section 101(c). The amended complaint requested the relief described in the text of the opinion.

The defendant President answered the amended complaint and requested that the action be dismissed. Defendant Mikva moved to be dismissed as defendant based on his allegation that the court lacked personal jurisdiction over him.

On December 13, 1979, the district judge originally assigned to the case sent to the Honorable James R. Browning, Chief Judge of the United States Court of Appeals for the Ninth Circuit, a Notification and Certificate that a three-judge district court should be convened. On December 21, 1979, the President moved for withdrawal of the Notification and Certificate. The motion was denied and on February 4,

1980, Chief Judge Browning designated a three-judge district court.

On February 25, 1980, the two defendants moved for summary judgment, with defendant Mikva expressly reserving his defense that the court lacked personal jurisdiction over him. The plaintiff responded on March 28, 1980, by opposing the defendants' motions and himself moving for summary judgment. Oral argument was heard on June 26, 1980. The court ruled from the bench that it was properly convened as a three-judge court.

5. The constitutional question and the more general question of Judge Mikva's qualifications and fitness for judicial office were extensively debated on the floor of the Senate, 125 Cong. Rec. S13342–S13362 (daily ed. Sept. 25, 1979). During the debate, Senator Edward Kennedy introduced two detailed legal memoranda prepared by the Justice Department on the constitutional question, so that the senators would be fully informed. *Id.* at S13360–S13362. Senator McClure made a speech attacking Congressman Mikva's political and social views and advised his colleagues that he would oppose the nomination specifically on that basis, urging them to do the same. *Id.* at S13351–S13353.

provides that suit may be brought either in the United States District Court for the District of Columbia or in any federal district court in the state which the senator or member of the House represents, irrespective of the distance between that state and the District of Columbia and irrespective of any connection between that state and the judicial appointment sought to be challenged.

In short, what the statute appears to authorize is a mechanism whereby a senator or member of the House of Representatives may challenge in a federal court in his or her home state the validity of the judicial appointment of a single person, Judge Mikva. Such a statute has, at one level, an entirely salutory purpose, for it would be antithetical to the rule of law that all government officials, and judges in particular, are pledged to uphold if a federal judge were permitted to take office in violation of the express terms of the United States Constitution. The statute is, however, problematic at quite another level, for under article III of the Constitution federal courts may decide only cases and controversies properly brought before them, by parties with sufficient stake in the dispute to ensure that a decision by the courts is not inconsistent with the limited role the courts must play within our tripartite federal system of government. The fact that the statute makes senators and members of the House, and no others, "enforcers" of the Constitution in the judicial forum implicates special concerns regarding the separation of powers.

## JUSTICIABILITY

The federal courts have consistently exercised care to limit their jurisdiction to the case and controversy requirement of article III. This governing principle is more easily stated than applied, however, since comprehended within the limitations imposed by the terms "cases" and "controversies" are concerns about the proper functioning of courts in dispute resolution and the allocation of power among the three branches of government.

■ Our initial analysis of the unusual statute before us embraced a full range of inquiry into the various aspects of justiciability.[6] We conclude, however, that one of its aspects—the requirement of standing— is dispositive. Article III requires that the parties to a lawsuit have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The issue confronting us is whether Senator McClure has such a personal stake.

The interpretations of the doctrine of standing are manifold. The Supreme Court

---

**6.** The Supreme Court described the concept of justiciability in *Flast v. Cohen*, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947 (1968):

Embodied in the words "cases" and "controversies" are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

One aspect of justiciability not raised by the parties, but which gave this court some pause, is the possibility that this court has been asked for an advisory opinion, an idea that is inconsistent with the "case" or "controversy" requirement of the Constitution. *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911).

Although the statute the Senator relies on is facially similar to the statute found ineffective in *Muskrat*, the differences are significant enough to remove the case from the proscriptions of whatever remains of the *Muskrat* rationale. *See, e. g., Northern Cheyenne Tribe v. Hollowbreast*, 425 U.S. 649, 96 S.Ct. 1793, 48 L.Ed.2d 274 (1976); *South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). Thus, we are not asked for an advisory opinion.

has considered the issue in numerous contexts and has expressed the standing requirements in several formulations. Some of the formulations leave one with the sense that standing can never be determined until the case has been tried on the merits; only at that point can one say with certainty that the plaintiff did or did not have a protected legal right or that he or she suffered a wrong for which the law provides a remedy. The distinction between injury "in fact" and injury "in law" and whether either or both remain requirements for standing is not always clear. The Court has at times required that a plaintiff show a distinct "legal interest" before he or she may have standing in federal court. *E. g., Jenkins v. McKeithen*, 395 U.S. 411, 423, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). More recently, the Court has said that a plaintiff must merely be within the "zone of interests" sought to be protected by the constitutional or statutory guarantee in question. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). In other cases, the Court has suggested that a plaintiff need only show "injury in fact" to satisfy the personal stake requirement of article III. *E. g., Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). A person may thus have standing, despite the lack of a demonstrable legal right, if he can show an injury in fact and, we would surmise, some colorable legal claim. The law is less clear that a person without an injury in fact may have standing, although it appears that at least in some limited circumstances a statute may give such a person a cause of action based on a rationale of enforcing the public interest through private persons concerned about public questions. *See, e. g., Sierra Club v. Morton*, 405 U.S. 727, 732 n.3, 92 S.Ct. 1361, 1364 n.3, 31 L.Ed.2d 636 (1972); *Metropolitan Washington Coalition for Clean Air v. District of Columbia*, 511 F.2d 809, 814 (D.C.Cir.1975); Clean Air Act, 42 U.S.C. § 7604 (Supp. II 1978) (authorizing civil suits by "any person"). But in *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), the Court, in acknowledging that Congress may grant an express right of action that otherwise would be barred on prudential grounds, affirmed that "the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."

■ In light of the foregoing, we now inquire whether Senator McClure has standing to bring this suit consistent with the requirements of article III. The analysis must be two-fold. First, without reference to any particular statute, does Senator McClure, either as a private individual or as a senator, have a sufficient personal stake in the challenge to Judge Mikva's appointment to give him standing? Second, if Senator McClure does not have a sufficient personal stake under that criterion, has Congress, by the statute under which Senator McClure seeks to sue, properly conferred a sufficient "right" upon him to give him standing and to satisfy the case or controversy requirement of article III?

Without reference to the statute under which Senator McClure seeks to sue, we conclude that a United States Senator, suing in either his individual capacity or his official capacity as a senator, lacks standing to challenge the validity of the appointment of a federal judge. In *Ex Parte Levitt*, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937) (per curiam), the Supreme Court denied a motion brought by a member of the Supreme Court bar for an order to show cause why Justice Black, then recently appointed to the Supreme Court, should be permitted to serve as a Justice. The challenge was based on the Ineligibility Clause, the same constitutional provision relied upon by Senator McClure in this suit. In denying the motion for lack of standing, the court said that "[i]t is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in

danger of sustaining a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public." 302 U.S. at 634, 58 S.Ct. at 1. As a private individual, then, it seems that Senator McClure does not have sufficient personal interest in the validity of Judge Mikva's appointment to have standing in federal court.

■ Senator McClure contends, however, that his special duties and responsibilities as senator gave him standing to challenge the appointment. The precise nature of a legislator's standing to sue in federal court is a matter of no small importance, for a readier access to courts by legislators, as legislators, is likely to give the courts increased opportunity and obligation to decide matters of public importance that might previously have been left to the legislative and executive branches. It is nevertheless the case that, in at least some circumstances, a legislator does have standing to sue as a legislator when he or she would not have standing as an individual. The touchstone is whether the legislator's interest in "maintaining the effectiveness of [his] votes" is sufficient to confer standing to challenge an action impairing that effectiveness. *Coleman v. Miller*, 307 U.S. 433, 438, 59 S.Ct. 972, 975, 83 L.Ed. 1385 (1939). In *Coleman*, the Supreme Court held that a group of Kansas legislators had standing to challenge both the right of the state's lieutenant governor to break a tie vote in the state senate, and the efficacy of the state's attempted ratification of an amendment to the United States Constitution which the state legislature had previously rejected. This principle has re-emerged in a recent case in the District of Columbia Circuit, in which Senator Kennedy was held to have standing to challenge President Nixon's pocket veto of a health care bill during a congressional recess. *Kennedy v. Sampson*, 511 F.2d 430 (D.C.Cir.1974). Senator Kennedy argued that the bill could not validly have been pocket vetoed during a recess, and that President Nixon's action not only deprived the Senator's earlier vote in favor of the bill of its effectiveness, but also deprived him of the opportunity to vote to override a normal veto.[7]

It is difficult to see how Senator McClure can argue that the effectiveness of his vote is impaired by the appointment of former-Congressman Mikva to the federal bench. Senator McClure had the opportunity to persuade his colleagues to vote against the confirmation and, in the conscientious performance of his duties, Senator McClure did just that.[8] That he and like-minded senators did not prevail in the Senate does not mean that the effectiveness of Senator McClure's vote was impaired within the meaning of *Coleman v. Miller*. It means merely that he was on the losing side. Certainly no one would contend, and we do not understand Senator McClure to contend, that the losing senators in any vote should automatically have the right to appeal to a federal court for a determination of the correctness of the result approved by the majority of their colleagues. If this were the case, federal courts would on such occasions be little more than legal advisors to the Congress, whose counsel could be obtained at the instance of any single member of that body. This would, of course, amount to the giving of advisory opinions that, whatever their desirability in a particular case, we are forbidden to provide. Thus, at least without a statute authorizing such suits, Senator McClure lacks standing to challenge, either as an individual or as a Senator, the appointment of former Congressman Mikva to the Court of Appeals.

---

7. *See also Harrington v. Bush*, 553 F.2d 190 (D.C.Cir.1973) (member of House of Representatives lacks standing to seek declaratory judgment prohibiting certain illegal activities by Central Intelligence Agency); *Harrington v. Schlesinger*, 528 F.2d 455, 459 (4th Cir. 1975) (members of House of Representatives lack standing to challenge expenditure of funds for military action in Southeast Asia); *Holtzman v. Schlesinger*, 484 F.2d 1307, 1315 (2nd Cir. 1973) (member of House of Representatives lacks standing to seek declaratory judgment prohibiting military action in Cambodia).

8. *See* note 4, *supra*.

We must therefore consider the effect, if any, of the jurisdictional statute under which Senator McClure seeks to sue. It is difficult to see how this statute may, consistent with article III, confer upon a senator or member of the House of Representatives a "right" to seek a decision from a federal court that such a senator or member of the House would otherwise be powerless to procure. The statute is not premised on protecting the effectiveness of a legislator's vote under the rationale of *Coleman v. Miller*, for it purports to grant standing to senators who voted for Judge Mikva as well as to those who voted against him. Furthermore, the statute purports to grant standing to members of the House of Representatives, who had no vote on the appointment at all. And we see no relevance, at least insofar as standing for members of the House is concerned, in the fact that Judge Mikva was, before his appointment to the bench, himself a member of the House.

Thus, we hold that Senator McClure, even with aid of the special jurisdictional statute on which he seeks to rely, does not have standing to bring this suit. The jurisprudential considerations go beyond simply setting proper limits on judicial power and containing its exercise within its rightful sphere. They serve also to protect against other branches of government, no matter how well-intentioned, voluntarily ceding to the federal judiciary powers and responsibilities that rightfully belong to the legislature or the executive. At bottom, the vice of the statute before us is its muddling of the roles, its blurring of the lines between the branches of government.

Members of Congress are the democratically-elected representatives of the people, chosen by them to enact the laws of the United States, to advise and consent to the appointment of policy-makers in the executive branch and judges in the judicial branch, and to perform certain other functions prescribed by the Constitution. The

statute under which Senator McClure brings this suit casts members of Congress in the role of special attorneys general, to plead before this court for a second opinion as to whether their judgments were right in voting for or against the confirmation of Judge Mikva. Under the Constitution, it was the duty of Congress itself, in the first instance, to determine Judge Mikva's qualifications both on the merits and on the issue of whether he was constitutionally eligible to serve as a judge. To allow members of Congress to change hats, as it were, to plead the unconstitutionality of their own acts before this court on the basis of an argument already debated in the Senate but lost there by vote, would, we suggest, set a dangerous precedent. We find that this court does not have jurisdiction, and we accordingly dismiss.[9]

---

**9.** Since we have determined that plaintiff McClure does not have standing to bring this suit, we do not reach the question of personal jurisdiction over Judge Mikva nor any of the other issues raised by the parties.