**NATIONAL ASSOCIATION OF REAL-TORS, Plaintiff–Appellant,**

v.

**NATIONAL REAL ESTATE ASSOCIATION, INC., et al., Defendants–Appellees.**

**No. 89–1013.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1989.

Decided Feb. 6, 1990.

issue waived and decline to address it. *Sotelo*, 850 F.2d at 1252.

Matthew J. Iverson (argued), Burditt, Bowles, Radzius & Ruberry, Chicago, Ill., for plaintiff-appellant.

Terrance J. Coughlin (argued), Chicago, Ill., for defendants-appellees.

Before CUDAHY, POSNER, and MANION, Circuit Judges.

POSNER, Circuit Judge.

The National Association of Realtors (NAR) appeals from the dismissal, for want of subject-matter jurisdiction, of its diversity suit against a rival trade association, the National Real Estate Association, Inc. (NREA), and several insurance companies. 699 F.Supp. 678 (N.D.Ill.1988). An Illinois not-for-profit corporation, NAR is a national association of real estate agents. The agents are the association's members, corresponding to shareholders in a for-profit corporation; Illinois not-for-profit corporations are forbidden to issue stock, and therefore have no shares and no shareholders. Ill.Rev.Stat. ch. 32, ¶¶ 106.05, 106.10, 107.03. Defendant NREA, a rival association that is an Ohio not-for-profit corporation, schemed with the defendant insurance companies (none of them citizens of Illinois) to offer "errors and omissions" policies—a form of malpractice insurance—to real estate agents who join NREA. Among the real estate agents solicited were members of NAR in Illinois and other states. The solicitation materials contained misrepresentations concerning the licensure and capitalization of the defendant insurance companies. (All these "facts" are from the complaint, the only pleading in the case; they may not be true.)

The suit—which although not a class action or other recognized form of representative action purports to be on behalf of NAR's members as well as on behalf of the association itself—charges the defendants in Count I of the complaint with fraud that has injured the reputation of the association and the pocketbooks of those of its

members who have bought insurance from the defendants. An injunction is sought against the defendants' soliciting or selling errors-and-omissions policies anywhere in the United States unless the insurance-company defendants are properly licensed. Counts II and III are carbon copies of Count I except that instead of charging fraud Count II charges negligent misrepresentation and Count III charges violation of Illinois' version of the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, ¶¶ 311 *et seq.* Count IV charges the same scheme as a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶¶ 261 *et seq.*, but instead of asking for an injunction, as the other counts do, asks the court to "award plaintiff all damages it and its members have suffered by reason of defendants['] violation."

The district judge held that the real parties in interest on the plaintiff's side of the case are NAR's members, not NAR, and since some of them are conceded to be citizens of Ohio, the requirement of complete diversity of citizenship (*Newman–Green, Inc. v. Alfonso–Larrain,* — U.S. —, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989)) is not satisfied. NAR, while conceding as it must that the citizenship of the real parties in interest is what counts for diversity purposes, *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 461–62 & n. 9, 100 S.Ct. 1779, 1782–83 n. 9, 64 L.Ed.2d 425 (1980); *F. & H.R. Farman–Farmaian Consulting Engineers Firm v. Harza Engineering Co.,* 882 F.2d 281, 284 (7th Cir. 1989); *Spartech Corp. v. Opper,* 890 F.2d 949, 952–53 (7th Cir.1989), denies that its members are the real parties in interest rather than itself, and in addition offers to cure the jurisdictional defect, if there is one, by dropping its claim for damages. The defendants argue that this will not do the trick.

■ NAR is a corporation, and for purposes of diversity jurisdiction the relevant citizenship is that of the corporation rather than that of its shareholders. *F. & H.R. Farman–Farmaian Consulting Engineers Firm v. Harza Engineering Co.,*

*supra,* 882 F.2d at 284. It is true that none of the cases asserting this rule concerns a non-share corporation—a corporation with members rather than shareholders. But *Coté v. Wadel,* 796 F.2d 981, 983 (7th Cir.1986), and *Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.,* 710 F.2d 87, 89 (2d Cir.1983), which assimilate professional corporations to ordinary corporations for diversity purposes, are close; for, realistically, the professional corporation's "shareholders" are not owners of equity capital but members of a partnership. We can think of no reason why the rule should be different for a formally shareless corporation. We hold that it is the same. The relevant citizenship is that of NAR rather than that of its members.

But the rule we have just stated, and have expanded to embrace non-share corporations, presupposes that the wrong is to the corporation rather than to the shareholders or members directly. If the defendants had blown up NAR's corporate headquarters, or broken a contract they had with the association, the wrong would be to the association even though the loss resulting from it would be borne ultimately by the real estate agents who are its members. Cf. *American Federation of Technical Engineers v. La Jeunesse,* 63 Ill.2d 263, 347 N.E.2d 712 (1976). The law does not lift the corporate veil in search of the ultimate incidence of the corporation's transactions; the tracing out of the incidence of such transactions is too complicated a process to make it a feasible preliminary to establishing federal jurisdiction. But suppose instead that an enraged member of NREA had assaulted a member of NAR. The assaulted member would be the real party in interest, and his citizenship would determine whether a suit for assault could be maintained in federal court under the diversity jurisdiction. He could not avoid the limitations on that jurisdiction by finding someone in a different state to sue on his behalf—such as the Rotary Club, or the Elks, or the Veterans of Foreign Wars, or some other organization of which he might be a member.

■ Yet that is this case—clearly so, as regards Count IV, which seeks to recover the damages that NAR's members suffered as a result of the defendants' alleged violations of an Illinois statute. If they suffered any damages it was as a result of solicitations and sales made to them directly, not to NAR with a trickle-down effect on them akin to the effect on shareholders of an injury to the corporation. NAR does not suggest that the defendants tried to sell it insurance. It contends that they tried to sell, and in some cases succeeded in selling, insurance to its members. The members were in the front line. They received the blow. NAR's counsel conceded at argument that if the association ever obtains any damages on its members' behalf under Count IV it will turn those damages over to the members. This shows that as regards the claim of damages NAR is a mere conduit for its members. It would not be if it were the injured one rather than they. The effect on shareholders, or members, of an injury to their corporation is indirect, buffered by the network of contractual relations through which costs and benefits incurred or received by a corporation are transmitted to real people.

■ Since it is the members of NAR who are the real parties in interest so far as the claim for damages on their behalf is concerned, it is their citizenship that counts for diversity purposes. Some of them are Ohioans, and therefore citizens of the same state as one of the defendants, NREA. The requirement of complete diversity of citizenship is indeed not satisfied.

Could the State of Illinois confer on NAR the right to seek redress for injuries to its members? "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973). For example, it has authorized persons to whom real estate agents make racially motivated misrepresentations concerning the availability of housing to sue the agents under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3604(d). In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374, 102 S.Ct. 1114, 1121–22, 71 L.Ed.2d 214 (1982), the Supreme Court held that "testers" (investigators of housing discrimination) to whom misrepresentations are made have standing to enforce the statute even though not injured by the misrepresentations, as real customers would be. See also *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1525–27 (7th Cir. Jan. 30, 1990). Presumably the State of Illinois could so something similar with respect to misrepresentations made to real estate agents (rather than by them, as in section 3604(d)): perhaps make such misrepresentations tortious even when not harmful in any sense currently recognized by tort law. But this would be the conferral of a substantive right, a right to be protected against particular conduct. *McClure v. Carter*, 513 F.Supp. 265 (D.Idaho) (three-judge court), aff'd without opinion, 454 U.S. 1025, 102 S.Ct. 559, 70 L.Ed.2d 469 (1981), holds that Congress may not circumvent Article III— which has been held, unhistorically but pragmatically, *Flast v. Cohen*, 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *People Organized for Welfare & Employment Rights v. Thompson*, 727 F.2d 167, 172–73 (7th Cir.1984), to require that a person wanting to maintain a suit in federal court demonstrate an actual injury that the court can redress, *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982)—by authorizing a person whose substantive rights have *not* been invaded to bring suit to redress an invasion of someone else's substantive rights. *Village of Bellwood v. Dwivedi, supra*, 895 F.2d at 1526. The statute invalidated in *McClure* authorized a member of the U.S. Senate to bring a federal suit to challenge the legality of the appointment of a federal judge. No substantive right of Senator McClure's had been invaded by that appointment.

The Illinois legislature has not conferred on NAR a substantive right that the defendants infringed by trying to defraud its members. Even if the legislature had done

this, yet had failed to extinguish the members' own tort rights, the members might be indispensable parties to this suit, in which event diversity would not be complete. And though it is true that if an injured person assigns his right of action to someone else, the assignee has standing to enforce the right even though he is not the one who was injured by the defendant's wrongdoing, *United States ex rel. Stilwell v. Hughes Helicopters, Inc.*, 714 F.Supp. 1084, 1099 (C.D.Cal.1989), the real estate agents victimized by the defendants' fraud have not assigned their fraud claims to NAR—and anyway tort claims generally are nonassignable.

So the district judge was right to dismiss the complaint. But since the dismissal, based as it was on lack of subject-matter jurisdiction, is without prejudice to the plaintiff's filing a new suit curing the jurisdictional defect, we should consider whether the defect is curable, for if not the new suit would have to be dismissed too. NAR argues that all it has to do to cure the defect is dismiss its request for damages (and not all of that request, but only the part that seeks damages on behalf of its members), which is confined to Count IV, in order to satisfy the requirement of complete diversity.

We disagree. The requirement is independent of the nature of the relief sought; it is as applicable to injunction cases as it is to damages cases. No cases so hold, but perhaps only because the proposition is obvious. The rationale for requiring complete diversity is that the presence of residents of the same state on both sides of the lawsuit neutralizes any bias in favor of residents; the rationale is independent of the nature of the relief sought. This point is obscured by the fact that associations have been held to have standing under Article III of the Constitution to seek injunctive relief—but never damages, for reasons our earlier discussion may have helped clarify—on behalf of their members. *Warth v. Seldin*, 422 U.S. 490, 511, 515–16, 95 S.Ct. 2197, 2213–14, 45 L.Ed.2d 343 (1975); *Telecommunications Research & Action Center v. Allnet Communication Services, Inc.*, 806 F.2d 1093 (D.C.Cir.1986).

For example, an agency for the promotion of the Washington apple industry was allowed to bring suit on behalf of the state's apple growers to invalidate a regulation in another state that made it difficult to sell Washington apples in that state. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 341–46, 97 S.Ct. 2434, 2440–43, 53 L.Ed.2d 383 (1977). All that such cases decide, however, is that the interest an association has in its members' welfare satisfies the constitutional minima for maintaining a suit in federal court. The issue we are considering with respect to NAR's suing as the representative of its members is not standing to sue, but citizenship; the cases on the standing of associations are federal-question cases and present no issue of citizenship. Those cases do not say or imply that someone who wants an injunction to redress a wrong that he has suffered can get around the limitations of the diversity jurisdiction by persuading an association to which he belongs to bring suit on his behalf. If real estate agents have been victimized by fraud, negligent misrepresentation, and statutory violations, all committed by a citizen of the same state as they, they cannot maintain a federal diversity suit by the facile expedient of suing through their trade association.

They might be able to do so by filing a class action, since the citizenship of unnamed class members is not germane to diversity, *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969), but this suit is not a class action and could not be. The named plaintiff in a class action is not merely a representative of the victims of the defendant's alleged wrongdoing; he is one of those victims. A class action to redress the wrongs alleged in this case would be filed by a real estate agent on behalf of himself and other agents.

This suit by NAR is more like an assignment intended to confer federal jurisdiction than like a representative action, and such assignments are invalid. 28 U.S.C. § 1359; *Hartford Accident & Indemnity Co. v. Sullivan*, 846 F.2d 377, 382 (7th Cir.1988). This rule qualifies the principle that "ordinarily the relevant citizenship for diversity

purposes is that of the named plaintiff rather than that of the persons on whose behalf he is suing." *F. & H.R. Farman-Farmaian Consulting Engineers Firm v. Harza Engineering Co., supra*, 882 F.2d at 284. If the real estate agents are the ones hurt by the defendants' conduct, they cannot by enlisting their association as their champion break out of the limits of the diversity jurisdiction.

■ Since an association is free as a matter of federal law to seek an injunction against wrongs that injure its members, Illinois could empower NAR to represent its members in this suit. But it has not done so. On the contrary, its highest court has held—with specific reference to nonprofit associations seeking to sue in the place of their members—that a "party seeking relief must possess a personal claim, status, or right which is capable of being affected." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill.2d 371, 376, 5 Ill.Dec. 827, 830, 362 N.E.2d 298, 301 (1977). See also *Austin View Civic Ass'n v. City of Palos Heights*, 85 Ill.App.3d 89, 103–04, 40 Ill.Dec. 164, 176–77, 405 N.E.2d 1256, 1268–69 (1980); *Spring Mill Townhomes Ass'n v. OSLA Financial Services, Inc.*, 124 Ill.App.3d 774, 778–79, 465 N.E.2d 490, 492–93 (1983); *Indian Hill Neighbors' Ass'n, Inc. v. American Cablesystems of Illinois*, 171 Ill.App.3d 789, 121 Ill.Dec. 677, 525 N.E.2d 984 (1988). NAR has no personal claim to, status regarding, or right to the legal claims or other property of its members. Article III does not prevent associations from bringing injunctive suits on their members' behalf but it does not entitle them to do so. The entitlement—a right of action—must be conferred on the association by (in this case) the Illinois courts or legislature. It has not been.

■ Could this suit be maintained on NAR's own behalf, without reference to the interests and entitlements of its members? The association has property of its own, but its counsel acknowledged at oral argument that the association has suffered no injury to that property—and no other measurable loss—as a result of the defendants' alleged misdeeds. One can imagine competitive injury to NAR because some of its members had been lured to a rival trade association by a fraudulent promise of insurance coverage. But this is not alleged, and at argument was disclaimed. One can imagine competitive injury because NAR offers a competitive product which is losing out in the marketplace as a consequence of NERA's misrepresentations. But it does not offer a competitive product. One can imagine a loss of membership fees as members go broke when their insurance claims are unpaid; NAR does not allege this form of injury either. The only injury to NAR alleged in the complaint is an injury to the association's reputation, but this too was disclaimed at argument when counsel acknowledged that the association had suffered no loss as a result of the defendant's conduct. The acknowledgment was prudent. It is difficult to understand how the sponsorship of a fraudulent insurance scheme by a rival trade association could injure—rather than enhance—NAR's reputation. Maybe the fear is that brokers will confuse NREA with NAR and think that the latter is the sponsor of the fraudulent scheme, but this is hardly plausible, and is not suggested; there is no contention that NREA is misrepresenting itself to be NAR or infringing NAR's trademarks.

Apart from any legal interest that NAR may have—or rather not have—in this suit, it has a general interest in the practices of the real estate industry, and for all we know it may have a well-founded concern with the practices attacked in its complaint. "Interest" is a chameleon, however, and "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself" to give the organization standing to sue. *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). See also *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976). NAR is not entitled to sue as the private attorney general of the American real estate industry.

Even if the association had an interest in this lawsuit sufficient to entitle it to sue on its own behalf, the members who are the real victims of the alleged fraudulent

scheme might (to repeat an earlier suggestion) be indispensable parties. If so, this suit could not go forward in their absence—could not go forward, period, since some of them are citizens of the same state as one of the defendants, and the citizenship of indispensable parties counts for purposes of diversity jurisdiction even if they are not named as parties. But we need not decide indispensability. The judgment of dismissal must in any event be

AFFIRMED.

CUDAHY, Circuit Judge, concurring:

The majority opinion, in which I join, is analytically defensible but pragmatically questionable—to say the least.

There is an important policy underlying the delimitation of diversity jurisdiction in 28 U.S.C. § 1332(c), which provides that a corporation is to be considered a citizen of its state of incorporation *and* the state encompassing its principal place of business. That policy is the desire to keep primarily local suits out of the federal courts. *See* S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Admin.News 3099, 3101–3102 (1958) (It is an abuse of federal jurisdiction when "a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State."). The instant suit does not appear to be primarily local since it involves two national real estate associations. In that connection, the majority concedes that section 1332(c) is applicable to membership corporations like the NAR. Section 1332(c) was clearly designed to obviate any need to pierce the corporate veil in order to determine corporate citizenship in a case like this.

Moreover, recognizing the NAR "as the real party in interest under Rule 17(a) not only avoids a multiplicity of actions by the individual members of the association, but also assures that the interests of the members as a collective group can be fully presented on litigation of the matter, due to the pooling of financial resources which is possible." *Mass. Ass'n, Etc. v. Commissioner of Ins.*, 373 Mass. 290, 367 N.E.2d 796, 802 (1977). The consequences of subordinating section 1332(c) to the significant (yet highly elusive) considerations given prominence in the majority opinion may be to unsettle severely the law in this area as it affects corporate citizenship and diversity jurisdiction. These consequences may actually run counter to the explicit purpose of a real party in interest rule designed to avoid a multiplicity of suits. I am afraid that the result of the majority's opinion may be to invite satellite litigation on this somewhat obscure point.

Despite these practical concerns, the majority's approach does not seem analytically incorrect, and the majority's opinion is persuasive—especially given current trends in this court's approach to matters of jurisdiction. With the reservations I have noted, I join the majority opinion.