In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-3393 & 99-3565

CCC INFORMATION SERVICES, INCORPORATED,
a Delaware corporation,

Plaintiff-Appellee,

v.

AMERICAN SALVAGE POOL ASSOCIATION,
a Florida non-profit corporation,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 97 C 8634 & 98 C 4535--David H. Coar, Judge.

Argued April 4, 2000--Decided September 22, 2000

Before COFFEY, ROVNER and DIANE P. WOOD, Circuit
Judges.

ROVNER, Circuit Judge.  We are presented in this
case with a purely jurisdictional question
regarding member corporations and diversity
jurisdiction. The district court found that the
members had a direct interest in the litigation
and that therefore their citizenship, as the real
parties in interest, should control in
determining whether complete diversity existed.
Because we believe that the corporation itself is
the real party in interest, we reverse and
remand.

I.

  CCC Information Services, Inc. ("CCC")
contracted with the American Salvage Pool
Association ("ASPA") to share information. ASPA
is a Florida not-for-profit corporation with its
principal place of business in Arizona. Because
it is a not-for-profit corporation, ASPA does not
have shareholders but rather has members. Its
members are 210 automobile salvage businesses
that store and sell automobile salvage. CCC is a
Delaware corporation with its principal place of
business in Illinois. CCC is in the business of
collecting automobile-related information,
processing that data and then selling it to

insurance companies. Under the contract, ASPA agreed that its participating members would provide CCC with information about automobile salvage, including, for each vehicle: make, model and year; selling price; sale date; mileage; and other useful information. CCC would, in turn, use this data to create average salvage valuations, which it would then sell to insurance companies. The contract provided, in relevant part, that ASPA owned the data, and that CCC had the right to use the ASPA name and any ASPA trademarks or trade names in selling the compiled information. The contract also provided that CCC would not compete with ASPA or its members in the automobile salvage business.

In 1997, CCC notified ASPA that it was terminating the agreement. CCC planned to create a new subsidiary that would engage in the business of brokering salvage, a business that arguably violated the non-compete provision in the contract. CCC also wished to create a new information product using ASPA's data, but the agreement did not allow this particular use of the data. CCC filed a declaratory judgment action in federal court, seeking a declaration that its new brokerage business would not violate the non-compete agreement, or in the alternative that the non-compete agreement was unenforceable. CCC also sought a declaration of the value of the ASPA data that it was using without authorization. ASPA filed a three-count counterclaim for breach of contract, for a declaration that the non-compete provision was enforceable, and for violations of the Illinois Trade Secret act. In its prayer for relief, ASPA sought compensatory and punitive damages, an order enjoining CCC from violating the non-compete provision, a declaration that the non-compete was enforceable, an order requiring CCC to return all of ASPA's proprietary information, and an order enjoining CCC from using ASPA's name and trademark in the promotion of CCC's information products. At approximately the same time that ASPA filed its counterclaim in federal court, ASPA's largest member, Insurance Auto Auctions, Inc. ("IAA"), filed suit against CCC in the chancery division of the Circuit Court of Cook County, Illinois. IAA is an Illinois corporation with its principal place of business in Illinois. In the state court suit, IAA alleged trade secret claims and breach of contract. At CCC's request, the Illinois court added ASPA as an indispensable party to the state court suit, and allowed CCC to file a counterclaim against ASPA. IAA then voluntarily dismissed its claims in state court and ASPA sought to remove CCC's counterclaim to federal court. The state court action was subsequently removed to federal court and consolidated with the federal case initiated by CCC.

Following discovery and only six weeks before the trial date set by the district court, CCC moved to dismiss the federal suit for lack of subject matter jurisdiction. CCC contended that, in the course of discovery, it had determined that ASPA's members were the real parties in interest. Because some of the members, including IAA, are Illinois citizens, and CCC is also an Illinois citizen, CCC contended that the requirement of complete diversity was not met, and the action should be dismissed. The district court agreed. Remarking that the real party in interest was the person who possessed the contractual right to be enforced, the district court found that the contract gave ASPA members a direct interest in the litigation of the non-compete clause. Because the ASPA members were at the "front line" of the litigation, the court found that the members were real parties in interest, and that their citizenship should therefore control for diversity purposes. The court therefore granted CCC's motion to dismiss. ASPA appeals.

II.

ASPA contends on appeal that when a corporation itself has a direct interest in the controversy, the corporation's citizenship should control for purposes of diversity, without regard to the citizenship of the members. ASPA cites the general rule that when a corporation is a party, the court should rely on the citizenship of the corporation alone when determining whether complete diversity exists. See 28 U.S.C. sec. 1332(c). According to ASPA, this Court's exception to that rule, carved out in National Association of Realtors v. National Real Estate Association, 894 F.2d 937 (7th Cir. 1990) ("NAR"), is limited to those situations where the named corporate party has no interest in the outcome of the litigation. Because this case involves ASPA's contractual rights, ASPA maintains that it is the real party in interest, and the court should consider only its corporate citizenship and not the citizenship of its members. ASPA also advocates a bright line analysis for diversity jurisdiction, and urges us to find that a rule focusing on the citizenship of the corporation even when the members have an inchoate interest in the litigation is more consistent with precedent. In response, CCC attempts to turn our attention to ASPA's request for injunctive relief, and specifically to the request to enjoin CCC from competing with ASPA's members. CCC contends that the members are the real parties in interest because it is the members and not the corporation that will suffer any financial loss from CCC's misappropriation of

the data, and it is the members who will suffer if CCC begins to conduct business in the auto salvage field. Indeed, CCC argues, because ASPA itself does not engage in the auto salvage business, CCC could not breach the non-compete unless it was competing with the members themselves. CCC cites every reference in the contract to the members, and points to ASPA's prayer for relief which includes requests that CCC be enjoined from competing with ASPA's members.

We review de novo the district court's dismissal for lack of subject matter jurisdiction. Sapperstein v. Hager, 188 F.3d 852, 855 (7th Cir. 1999). We look first to the complaint to determine whether subject matter jurisdiction is established, accepting as true all well pleaded allegations and the inferences that may be reasonably drawn from those allegations. Id. When evidence pertinent to subject matter jurisdiction has been submitted, the court may look beyond the jurisdictional allegations of the complaint to determine whether subject matter jurisdiction exists. Id. Ordinarily, we look only to the citizenship of the named parties and not to the citizenship of the persons being represented by a named party in order to determine whether complete diversity exists. F. & H.R. Farman-Farmaian Consulting Engineers Firm v. Harza Engineering Co., 882 F.2d 281, 284 (7th Cir. 1989), cert. denied, 497 U.S. 1038 (1990). This is the general rule for corporations as well as natural persons. See 28 U.S.C. sec. 1332 (c)(1). With certain exceptions that are not relevant here, that section provides that a corporation is deemed a citizen of the State in which it was incorporated and of the State where it has its principal place of business. ASPA was incorporated in Florida and has its principal place of business in Arizona, and therefore it is a citizen of those states. The fact that ASPA is a not-for-profit member corporation rather than a corporation with shareholders is irrelevant to this determination. See NAR, 894 F.2d at 939 (the general rule that, for diversity purposes, the relevant citizenship is that of the corporation rather than the shareholders applies equally to member corporations); Cote v. Wadel, 796 F.2d 981, 983 (7th Cir. 1986) ("for purposes of diversity jurisdiction a corporation is a corporation is a corporation.").

A corollary of the general rule we just stated is that the citizenship of the real party in interest is determinative when deciding whether the district court has diversity jurisdiction. Navarro Savings Association v. Lee, 446 U.S. 458, 460-61 (1980); Wilsey v. Eddingfield, 780 F.2d

614, 615 (7th Cir. 1985), cert. denied, 475 U.S. 1130 (1986). This is because a party who has no real interest in the outcome of the litigation should not be able to use its citizenship to transform a local controversy into a federal case. Id.; see also Northern Trust Co. v. Bunge Corp., 899 F.2d 591, 595 (7th Cir. 1990) (where a corporation acts only as a representative for a group of individuals and has no interest itself in the outcome of the litigation, the citizenship of the represented parties controls for diversity purposes). This is the principle that determined the outcome in NAR, a case both parties agree is important to the outcome here.

NAR was an Illinois not-for-profit corporation that functioned as a national association of real estate agents. Like ASPA, NAR was a member corporation, and the real estate agents were the members. The defendant in that case, NREA, was an Ohio not-for-profit corporation that also served as a national association of real estate agents. NAR sued NREA for fraud, negligent misrepresentation, violations of the Illinois Deceptive Trade Practices Act, and violations of the Illinois Consumer Fraud Act. NAR brought the suit on behalf of the association and its members, claiming injury to the reputation of the association and a monetary injury to the members. NAR also sought injunctive relief. The claims were based on NREA's sale of insurance polices to NAR's members. The district court determined that NAR's members were the real parties in interest, and that because some of them were citizens of Ohio, the requirement of complete diversity was not satisfied. See NAR, 894 F.2d at 939. On appeal, this Court stated the general rule that, for the purposes of diversity jurisdiction, when the plaintiff is a corporation, the relevant citizenship is that of the corporation and not that of the shareholders. Id. We also held that the rule was the same whether the corporation was made up of shareholders or members. We then noted the exception to this rule:

But the rule we have just stated, and have expanded to embrace non-share corporations, presupposes that the wrong is to the corporation rather than to the shareholders or members directly. If the defendants had blown up NAR's corporate headquarters, or broken a contract they had with the association, the wrong would be to the association even though the loss resulting from it would be borne ultimately by the real estate agents who are its members. The law does not lift the corporate veil in search of the ultimate incidence of the corporation's transactions; the tracing out of the incidence of such transactions is too complicated a process to make it a feasible preliminary to establishing

federal jurisdiction.

894 F.2d at 939 (citations omitted). Because the Illinois Consumer Fraud Act claim was based entirely on a wrong directly to the members, and not a wrong to the corporation that damaged the members through a trickle down effect, we held that the members were the real parties in interest for that claim. NAR did not claim that NREA tried to sell insurance to NAR, but rather to its members. "The members were in the front line. They received the blow." 894 F.2d at 940. NAR conceded that it intended to hand over to its members any damages recovered under the Illinois Consumer Fraud count. We noted that this demonstrated that NAR was a mere conduit for its members in regards to that claim. NAR would not be a mere conduit "if it were the injured one rather than they. The effect on shareholders, or members, of an injury to their corporation is indirect, buffered by the network of contractual relations through which costs and benefits incurred or received by a corporation are transmitted to real people." Id.

We have in the instant case the very situation mentioned by the NAR Court. CCC breached a contract with ASPA, not ASPA's members, and therefore ASPA is at the front line. ASPA is the party that feels the blow. That the members feel the blow though a trickle down effect is irrelevant to jurisdictional analysis under NAR. CCC nonetheless maintains that for the purposes of the non-compete clause, ASPA's members are on the front line rather than ASPA because ASPA itself is not engaged in the salvage business. It is true that the members are third party beneficiaries to the contract between ASPA and CCC, and the members could have sought to enforce their rights on that basis. With the exception of IAA that we noted above, they did not seek to enforce their rights, and IAA voluntarily dismissed its state court suit against CCC. ASPA conceded at oral argument that if CCC prevailed on ASPA's non-compete claims, the members would be bound by that result, and we agree. In a suit where the members sought to enforce their rights as third party beneficiaries, the members' citizenship would control. But where the members are incidentally benefitted by the association's enforcement of its own contract rights, the citizenship of the association is the only relevant factor in the diversity analysis. As we noted in NAR, any other rule would be too complicated a process to make it a feasible preliminary to establishing federal jurisdiction. 894 F.2d at 940. Because ASPA is completely diverse from CCC, we hold that the district court has jurisdiction over this action.

REVERSED AND REMANDED.